REBECCA BARNETT, as Special Adm'x of the Estate of Travis King, Deceased, Plaintiff-Appellant, v. ZION PARK DISTRICT, Defendant-Appellee.

Second District    No. 2—93—1000

Opinion filed November 2, 1994.

284

Robert N. Goshgarian, Leigh A. Dunham, and Robert J. Samson, all of Law Offices of Robert N. Goshgarian, of Waukegan, for appellant.

James D. Wascher, of Friedman & Holtz, P.C., of Chicago, and Donald L.

Sime, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee.

Kathryn James Anderlik and Steven A. Kozicki, both of Judge & James, Ltd., of Park Ridge, for *amici curiae.*

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Rebecca Barnett, brought this action against defendant, the Zion Park District, after her 10-year old son, Travis King, drowned at the Port Shiloh swimming pool which is owned and operated by defendant. The trial court granted summary judgment to defendant. Plaintiff appeals, alleging that the depositions and pleadings filed created a genuine issue of material fact and that the trial court's dismissal of certain counts in plaintiff's second amended complaint was improper because the pleadings stated a cause of action under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—101 *et seq.*). We affirm.

The facts indicate that Travis King was swimming at the Port Shiloh swimming pool on June 9, 1990. There were 11 lifeguards on duty watching the large pool and diving area, the south pool, and the baby pool. Travis was apparently walking forward on a diving board when he slipped, fell back, and hit his head on top of the board. Several witnesses then saw Travis struggle and slip towards the bottom of the pool. At least two patrons of the pool approached two different lifeguards regarding Travis' accident, but the lifeguards failed to respond to these pleas, saying they did not see anyone fall. After Travis was in the water about two or three minutes, a man finally dove in and pulled Travis from the water. A Port Shiloh lifeguard unsuccessfully attempted to administer CPR to Travis, who died soon thereafter.

Plaintiff filed her original complaint on March 18, 1991, and subsequently filed an amended complaint and a second amended complaint. Defendant filed a motion to dismiss the second amended complaint. The trial court dismissed with prejudice the counts in that complaint which alleged negligence. The trial court dismissed with leave to amend the counts alleging willful and wanton conduct. Plaintiff then filed a third and fourth amended complaint. The trial court dismissed most of the allegations contained in the three counts of the fourth amended complaint.

Defendant filed a motion for summary judgment on June 7, 1993, contending that it was not guilty of willful and wanton conduct and, in any case, that it was immune from liability under section 3—108(b) of the Act (745 ILCS 10/3—108(b)). Plaintiff filed her fifth amended complaint on June 14, 1993.

Plaintiff's fifth amended complaint alleged in pertinent part that defendant:

"(a) Failed to initiate lifesaving procedures to plaintiff's decedent after being told by another patron of the pool that plaintiff's decedent had slipped, fell and struck his head on a diving board and dropped into the water;

(b) Did not initiate lifesaving procedures to plaintiff's decedent after being told by another patron of the pool that plaintiff's decedent was drowning;

(c) Did not initiate lifesaving procedures to plaintiff's decedent after being told by another patron of the pool that plaintiff's decedent was having trouble swimming."

Plaintiff also submitted to the trial court depositions of pool patrons who witnessed Travis struggling in the water. Karen Montgomery testified that she told a lifeguard that she saw a boy who looked like he needed help in the pool. Montgomery said that Travis was about a foot away from the side of the pool and only a few feet away from her when she spoke to the lifeguard. The lifeguard merely indicated that she had had trouble with those particular kids that day, that they were only playing, and that the boy was alright. The lifeguard then turned away from Montgomery.

Jason Lewis testified that he saw a boy slip and hit his head on the diving board and fall into the pool. Lewis said he quickly went over to tell a lifeguard what had happened. The lifeguard allegedly accused Lewis of playing around and said she did not see anyone fall into the pool. Lewis said he then ran over to the "guard shack" to tell someone else about the incident. The man Lewis talked to then ran out of the guard shack and jumped into the pool to retrieve the boy. Two other witnesses who saw Travis slip and fall testified that Travis was in the pool at least two or three minutes before he was pulled from the water.

The trial court granted defendant's motion for summary judgment and dismissed plaintiff's fifth amended complaint with prejudice. Plaintiff filed a timely appeal.

Plaintiff contends that summary judgment was improper because the pleadings and depositions adequately pose a genuine issue of material fact as to whether the lifeguards exhibited willful and wanton conduct when they failed to notice that Travis was in distress and, moreover, failed to act after they were notified by pool patrons that the child was in distress. A trial court should grant a motion for summary judgment when the pleadings, depositions, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS

5/2—1005(c) (West 1992); *In re Estate of Herwig* (1992), 237 Ill. App. 3d 737, 741.) This court applies the *de novo* standard of review in determining the existence of a genuine issue of material fact. *Green v. International Insurance Co.* (1992), 238 Ill. App. 3d 929, 934.

■ Initially, we must reject plaintiff's contention that section 3—106 of the Act is applicable to this case. That section states:

"Neither a local entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3—106 (West 1992).

Our supreme court recently addressed section 3—106 in *McCuen v. Peoria Park District* (1994), 163 Ill. 2d 125. In *McCuen*, plaintiffs climbed onto a hayrack to take a mule-drawn hayride in a public park. While the employee was harnessing the mules, he slapped a strap over the body of one of the mules, causing the mule team suddenly to bolt and run off with the driverless hayrack. Several riders were injured.

Plaintiff McCuen and others sued the park district, alleging that the park district employee negligently handled the mule team. The park district maintained that it was immune from liability under section 3—106 of the Act. The supreme court held that, if liability is not based on the existence of a condition of public property, section 3—106 does not apply. The supreme court concluded that a driverless hayrack is not a condition of public property within the meaning of section 3—106 since plaintiffs did not maintain that the hayrack itself was dangerous or defective. (*McCuen*, 163 Ill. 2d at 129.) Here, the liability alleged by plaintiff is clearly based on the conduct of the lifeguards at the pool and not on any physical defect of the premises. We conclude that section 3—106 is inapplicable to the facts presented in the instant case.

■ We next address whether defendant owed the decedent a duty to supervise under section 3—108(b) of the Act. This section provides:

"(b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." 745 ILCS 10/3—108(b) (West 1992).

Section 1—101.1 of the Act states that the purpose of the Act "is to protect local public entities and public employees from liability

arising from the operation of government. It grants only immunities and defenses." (745 ILCS 10/1—101.1 (West 1992).) As the Appellate Court, Third District, recently affirmed, the courts of this State have repeatedly held that " 'the Act does not create any new liabilities for negligent acts or omissions which did not previously exist, but rather articulates the common law duty to which the subsequently delineated immunities apply.' " (*Blankenship v. Peoria Park District* (3d Dist. Sept. 23, 1994), No. 3—93—0953, slip op. at 4, citing *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 412.) Accordingly, we conclude that section 3—108(b) of the Act does not impose a duty on the defendant.

■ Nonetheless, we hold that defendant owed a common-law duty of care to plaintiff. In so doing, we follow the third district's recent ruling in *Blankenship*, which also concerned a patron drowning in a public pool. The *Blankenship* court declined to follow *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612. In *Brown*, the Appellate Court, First District, held that the Chicago Park District did not owe a duty to a mentally handicapped drowning victim. The *Brown* court determined that its decision was controlled by *Gebhardt v. Village of La Grange Park* (1933), 354 Ill. 234, where the supreme court held that a municipality was not liable for negligence arising out of the operation of a swimming pool because, in so doing, the village was engaged in a governmental and not a proprietary function and was therefore immune. *Gebhardt*, 354 Ill. at 239-40.

As the court in *Blankenship* stated, the *Brown* decision was based on the old doctrine of sovereign immunity that was abolished in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11. The *Molitor* ruling, which discarded any distinction between governmental or proprietary functions, was specifically applied to park districts in *List v. O'Connor* (1960), 19 Ill. 2d 337. As noted in *Blankenship*, the existence of a duty and the existence of immunity are separate and distinct issues. (*Blankenship*, slip op. at 7.) Since the abolishment of sovereign immunity, our courts have held that "[g]overnmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability." (*LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 705.) Accordingly, we hold, in accord with *Blankenship*, that defendant owed plaintiff a duty to take precautions for the safety of patrons of the swimming pool. *Cope v. Doe* (1984), 102 Ill. 2d 278, 288; see also the Swimming Pool and Bathing Beach Act (210 ILCS 125/1 *et seq.* (West 1992)).

■ We now address whether section 3—108(b) confers immunity to defendant under these facts. Plaintiff argues that defendant willfully and wantonly failed to provide supervision "under the plain

meaning of the word" and that the presence of lifeguards does not constitute supervision *per se.*

Plaintiff attempts to apply a substantial limitation on the immunity of section 3—108(b) where none exists. We conclude that the language of this section unconditionally grants immunity to defendant unless the injuries are proximately caused by its failure to provide supervision during the stated pool hours. In *West v. Kirkham* (1992), 147 Ill. 2d 1, our supreme court refused to hold that immunity under section 3—104 of the Act, regarding the failure to provide traffic signals and signs, was limited to those situations in which the municipality was without notice. In doing so, the court contrasted the language of other sections of the Act where "the legislature, in clear and deliberate language, expressed its intent to *limit* those sections' immunity." (Emphasis in original.) (*West,* 147 Ill. 2d at 7; see also 745 ILCS 10/3—102(a) (West 1992) (municipality is immune from liability under duty to maintain public property in a safe condition unless it had actual or constructive notice of the unsafe condition); 745 ILCS 10/3—103(a) (West 1992) (grants immunity for injury caused by municipality's adoption of a properly authorized plan or design for a public improvement except for those situations where it appears that an unsafe condition has been created); 745 ILCS 10/3—106 (West 1992) (grants immunity for injuries based on a condition of any public property used for recreational purposes unless willful and wanton conduct proximately caused the injury).) We conclude that section 3—108(b) clearly and unequivocally immunizes defendant where supervision is provided during pool hours.

The facts here indicate that supervision was provided as required in section 3—108(b) at the swimming pool on the day Travis drowned. Eleven lifeguards were on duty during the operating hours posted for the pool that day. The number of lifeguards observing the pool far exceeded the number required for a swimming complex of that size, and all guards were trained and certified.

We distinguish the facts of this case from the third district's recent holding in *Blankenship.* In *Blankenship,* three lifeguards were working at the public swimming pool. Just before decedent drowned, the lifeguards cleared the pool for an adult swim. All three of the lifeguards allegedly went into a room adjacent to the pool where they were unable to see the pool. Decedent, the only adult in the pool, struck her head on a diving board and floated face down in the water for two to three minutes before someone ran to get the lifeguards. (*Blankenship,* slip op. at 2.) The third district concluded that the allegations of plaintiff's complaint constituted a "failure to provide supervision" within the meaning of section 3—108(b) of the Act. The court stated:

"Although three lifeguards were ostensibly on duty and were present in the pool area, according to the complaint they were on a break and were not in a position to observe the pool. This was not mere inattention or a momentary lack of vigilance, it was a complete absence of supervision. Notwithstanding the Park District's argument that supervision means general oversight and availability rather than continuous attention to every person, we need not determine the precise parameters of that term. We simply hold that under the facts alleged here there is no supervision under section 3—108(b)." *Blankenship*, slip op. at 8-9.

In contrast, we believe the pleadings and depositions in the instant case indicate that the lifeguards were present around the pool and supposedly supervising the patrons when Travis drowned. Although the supervision may have been deficient, defendant need only provide supervision in order to acquire immunity under section 3—108(b) of the Act.

The tragic consequences in this case compel us to urge the legislature to revise section 3—108(b) so that it articulates what constitutes supervision under the Act. In the alternative, this section should contain a clause excepting willful and wanton behavior from the protection of immunity. The unconditional language of this section exonerates the arguably willful and wanton behavior exhibited by the lifeguards here and forces a devastating result on the plaintiff.

■ We last address plaintiff's contention that the trial court's dismissal of counts I, III, and V of the second amended complaint was improper because the pleadings stated a cause of action under the Act. We agree with defendant that plaintiff waived this claim by failing to reallege or otherwise incorporate the pleadings into her third, fourth, or fifth amended complaint. As this court noted in *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority* (1992), 229 Ill. App. 3d 793, plaintiff could have elected to stand on the dismissed counts and argue such at the appellate level prior to filing further amended complaints, or she could have realleged or preserved the dismissed counts in her third amended complaint. Plaintiff did neither and has therefore waived this court's consideration of the dismissal of these counts. *Du Page Aviation Corp.*, 229 Ill. App. 3d at 800.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

QUETSCH and PECCARELLI, JJ., concur.