(No. 78161.—Affirmed.)

REBECCA BARNETT, as Special Adm'r of the Estate of Travis King, Deceased, Appellant, v. ZION PARK DISTRICT, Appellee.

*Opinion filed April 18, 1996.*

HARRISON and McMORROW, JJ., dissenting.

Robert N. Goshgarian and Robert J. Samson, of Waukegan, for appellant.

Donald L. Sime, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, and James D. Wascher, of Friedman & Holtz, P.C., of Chicago (Steven J. Kleinman, of Wheaton, of counsel), for appellee.

Patricia J. Whitten, of Chicago (William A. Morgan, of counsel), for amicus curiae Board of Education of the City of Chicago.

Merlo, Kanofsky, Brinkmeier & Douglas, of Chicago (Alan J. Brinkmeier, of counsel), for amicus curiae Forest Preserve District of Cook County.

Judge & James, Ltd., of Park Ridge (Jay S. Judge and Kathryn James Anderlik, of counsel), for amici curiae Illinois Governmental Association of Pools et al.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Rebecca Barnett, as special administrator of the estate of her son, Travis King, brought an action

in the circuit court of Lake County against defendant, the Zion Park District (District). Travis drowned in a swimming pool owned and operated by the District.

The trial court granted the District's motion for summary judgment and the appellate court affirmed. 267 Ill. App. 3d 283. We allowed Barnett's petition for leave to appeal (145 Ill. 2d R. 315(a)), and now affirm the appellate court.

## BACKGROUND

The record contains the following pertinent facts. The District is a local public entity as defined by the Local Governmental and Governmental Employees Tort Immunity Act (hereafter Tort Immunity Act or Act) (745 ILCS 10/1—206 (West 1992)). On June 9, 1990, the District owned and operated the Port Shiloh swimming complex. The facility included a pool alternatively referred to as the "old," "north," or "deep" pool (hereafter deep pool); the "south" pool; and the "baby" pool. The deep pool is 75 feet long, 45 feet wide, and 3 feet deep at the shallow end and 11 feet deep at the deep end.

June 9 was the first day of the 1990 swimming season. A sign was posted at the entrance to the facility's locker rooms that stated, *inter alia*, the dates and hours of operation and the general operating rules. Eleven lifeguards were on duty at the three swimming pools. Six lifeguards were on duty at the deep pool; Illinois Department of Public Health regulations required only two or three. 77 Ill. Adm. Code § 820.300(b)(3)(B) (1988 Supp.). The six lifeguards on duty at the deep pool were certified by the American Red Cross in lifesaving, cardiopulmonary resuscitation (CPR), and first aid, also required by public health regulations. They had received additional training from the District in lifesaving skills, CPR, and preparing for emergencies. The six lifeguards were actively overseeing, directing, and managing the pool.

The record contains evidence that 10-year-old Travis was walking forward on a diving board when he slipped, fell back, hit his head on top of the board, and fell into the water. Travis struggled, then sank towards the bottom of the pool. At least two pool patrons alerted two lifeguards to Travis' distress. However, the lifeguards dismissed their pleas and failed to respond, saying that they did not see anyone fall.

After Travis was in the water for approximately two or three minutes, a pool patron finally dove in and brought Travis up to the surface. Lifeguards pulled Travis out of the water and unsuccessfully administered CPR. Travis died a short time later.

Barnett brought an action against the District. Her original complaint contained wrongful death and survival claims that alleged negligence and willful and wanton misconduct. The negligence counts were dismissed from her second-amended complaint, and Barnett proceeded on her willful and wanton counts alone.

In her fifth-amended complaint, Barnett alleged that the District committed the following willful and wanton misconduct:

"(a) Failed to initiate lifesaving procedures to [rescue Travis] after being told by another patron of the pool that [he] had slipped, [fallen] and struck his head on a diving board and dropped into the water;

(b) Did not initiate lifesaving procedures to [rescue Travis] after being told by another patron of the pool that [Travis] was drowning;

(c) Did not initiate lifesaving procedures to [rescue Travis] after being told by another person at the pool that [Travis] was having trouble swimming."

The trial court granted the District's motion for summary judgment. Barnett appeals.

## DISCUSSION

We address at the outset two procedural issues. Barnett assigns error to the dismissal of the negligence

counts from her prior complaint. She also contends that this is not a proper case for summary judgment.

Dismissal of Negligence Counts from Prior Complaint

Barnett assigns error to the trial court's dismissal of her negligence counts from her second-amended complaint. However, Barnett did not stand on the dismissed counts and appeal their dismissal prior to pleading over, *i.e.*, filing a subsequent amended complaint. When a complaint is dismissed, a plaintiff must stand by the complaint if he or she wishes to have the dismissal reviewed. If the plaintiff pleads over, he or she waives the dismissal and has no right to assign error thereto. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 155 (1983), quoting *Cottrell v. Gerson*, 371 Ill. 174, 179 (1939); see also *Villareal v. Trevino*, 30 Ill. App. 2d 77, 81-82 (1961).

Barnett insists that the negligence counts in her second-amended complaint are part of her fifth-amended complaint. However, Barnett did not reallege or otherwise incorporate those counts in her third, fourth, or fifth amended complaint. Rather, she proceeded on her willful and wanton counts alone. Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned and withdrawn. *Foxcroft*, 96 Ill. 2d at 154, quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963). Allegations in a former complaint not incorporated in the final amended complaint are deemed waived. *Foxcroft*, 96 Ill. 2d at 155. Thus, Barnett has waived appellate review of the dismissal of the negligence counts.

Availability of Summary Judgment

Barnett contends that this is not a proper case for summary judgment. In reviewing a trial court's entry of

summary judgment, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1992). A court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. Review of summary judgment rulings is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 131-32 (1992).

Barnett argues that genuine issues of material fact exist that preclude the entry of summary judgment. She labels as questions of fact whether the lifeguards committed willful and wanton misconduct and whether the lifeguards provided "supervision" within the meaning of section 3—108(b) of the Tort Immunity Act (745 ILCS 10/3—108(b) (West 1992)). However, these issues ultimately involve interpreting the Tort Immunity Act, which is purely a matter of law and appropriate for summary judgment. See *Lane v. Titchenel*, 204 Ill. App. 3d 1049, 1053 (1990); *Antonides v. Plascon, Inc.*, 103 Ill. App. 3d 78, 81 (1981). Likewise, the related question of whether the District owed Travis a duty of care is a matter of law and appropriate for summary judgment. See *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991).

## Tort Immunity Act

We now reach the merits of this appeal. In seeking and obtaining summary judgment, the District argued that it was not liable in tort as a matter of law because: (1) it did not owe Travis any legal duty, and (2) it was immune from liability under section 3—108(b) of the Tort Immunity Act (745 ILCS 10/3—108(b) (West 1992)).

Under the doctrine of sovereign immunity, a governmental unit in Illinois was immune from tort liability.

However, this court abolished sovereign immunity in 1959. *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959). In response to *Molitor*, the legislature in 1965 enacted the Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)). Also, the 1970 Illinois Constitution abolishes the doctrine of sovereign immunity, except as the legislature may provide by statute. Ill. Const. 1970, art. XIII, § 4. The Tort Immunity Act adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 506-07 (1990). Based on these developments, "[g]overnmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability." *LaMonte v. City of Belleville*, 41 Ill. App. 3d 697, 705 (1976), citing *Krieger v. Village of Carpentersville*, 8 Ill. App. 3d 243, 247 (1972); accord *Austin View Civic Ass'n v. City of Palos Heights*, 85 Ill. App. 3d 89, 95 (1980).

## Duty

Barnett contends that the District owed Travis a duty of reasonable care. There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. *Boyd v. Racine Currency Exchange, Inc.*, 56 Ill. 2d 95, 97 (1973); *Barnes v. Washington*, 56 Ill. 2d 22, 26 (1973). It is settled that the Tort Immunity Act does not impose on a municipality any new duties. Rather, the Act merely codifies those duties existing at common law, to which the subsequently delineated immunities apply. *West v. Kirkham*, 147 Ill. 2d 1, 14 (1992); *Vesey*, 145 Ill. 2d at 412-13. Thus, we must look to the common law and other statutes to determine whether the District owed Travis a legal duty. See *Vesey*, 145 Ill. 2d at 413.

We agree with the appellate court that the District owed Travis a common law duty of reasonable care. Unquestionably, at common law a private operator of a public swimming pool or public bathing resort would have owed Travis a duty to make reasonable provisions and to take reasonable precautions for his safety. See *Cope v. Doe*, 102 Ill. 2d 278, 288 (1984); *Brumm v. Goodall*, 16 Ill. App. 2d 212, 224-25 (1958); *Decatur Amusement Park Co. v. Porter*, 137 Ill. App. 448, 452 (1907). The appellate court in this case, agreeing with *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416 (1994), reasoned that since the District is as liable in tort as a private tortfeasor absent an immunity statute (see *LaMonte*, 41 Ill. App. 3d at 705), then the District likewise owed Travis a duty of reasonable care. 267 Ill. App. 3d at 288; *Blankenship*, 269 Ill. App. 3d at 419-21.

In reaching this conclusion, the appellate court in this case and in *Blankenship* declined to follow *Brown v. Chicago Park District*, 218 Ill. App. 3d 612 (1991). In *Brown*, the appellate court held that the defendant park district did not owe a private plaintiff the common law duty of reasonable care owed by private operators of public swimming pools. The *Brown* court, relying on *Gebhardt v. Village of LaGrange Park*, 354 Ill. 234 (1933), reasoned that the park district's operation of a swimming pool was a governmental function rather than a proprietary function. Therefore, the park district was immune from liability. *Brown*, 218 Ill. App. 3d at 616, relying on *Gebhardt*, 354 Ill. at 239-40.

This court rejected the reasoning of *Brown* over 35 years ago. In *List v. O'Connor*, 19 Ill. 2d 337 (1960), the appellate court had relied on *Gebhardt* in finding that a municipal corporation's maintenance and operation of parks was a governmental function, thus immunizing the defendant park district from tort liability. *List*, 19 Ill. 2d at 339, citing *List v. O'Connor*, 21 Ill. App. 2d 399

(1959). This court disapproved of such an analysis as applied to park districts, stating that "the decision in the *Molitor case*, in discussing the doctrine of sovereign immunity, dismisses as immaterial any distinction between governmental or proprietary functions." *List*, 19 Ill. 2d at 340; see *Blankenship*, 269 Ill. App. 3d at 421; *Barnett*, 267 Ill. App. 3d at 288.

*Brown* employed the same analysis that this court disapproved of in *List*. We hold that *Brown* is erroneous; it is hereby overruled.

It is important to recognize that the existence of a duty and the existence of an immunity are separate issues. We have concluded that the District owed Travis a common law duty of reasonable care. We now address whether the District is immune from liability if it breached that duty.

### Section 3—108

Barnett contends that section 3—108 of the Tort Immunity Act does not immunize the District from liability in this case. That section provides:

"§ 3—108. (a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.

(b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." 745 ILCS 10/3—108 (West 1992).

In interpreting section 3—108, our primary goal is to ascertain and give effect to the intention of the legislature. We seek the legislative intent primarily from the language used in the Tort Immunity Act. We

evaluate the Act as a whole; we construe each provision in connection with every other section. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). If we can ascertain the legislative intent from the plain language of the Act itself, that intent must prevail, and we will give it effect without resorting to other interpretive aids. See *Envirite v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994). We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

### Willful and Wanton Misconduct

Barnett first argues that section 3—108 does not establish unconditional immunity, but rather provides an exception for willful and wanton misconduct. The District and a supporting *amicus* initially respond that Barnett has waived this issue for review. The record shows that she did not rely on this argument in opposing the District's motion for summary judgment or in seeking reversal before the appellate court. Since Barnett presents this issue for the first time on appeal, we would normally deem it waived. See *Snow v. Dixon*, 66 Ill. 2d 443, 453 (1977).

However, we will address this issue. The waiver rule is an admonition to litigants and not a limitation upon the jurisdiction of a reviewing court. This is a case where this court's responsibility for a just result and for the maintenance of a sound and uniform body of precedent overrides considerations of waiver. See *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991), citing *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967).

The record also shows that Barnett did not raise this issue in her petition for leave to appeal to this court,

but rather waited until her initial brief to assert the issue. Consequently, we need not consider this issue and could deem it waived. See *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 313 (1992); *Dineen v. City of Chicago*, 125 Ill. 2d 248, 265 (1988). However, we exercise our discretion to address this issue. See *Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 145 (1972).

Barnett argues specifically that subsection (a) does not establish unconditional immunity, but rather provides an exception for willful and wanton misconduct. Barnett notes that subsection (a) establishes an immunity for failure to supervise, "[e]xcept as otherwise provided by this Act." She reasons that this phrase requires that subsection (a) be read in conjunction with other sections of the Tort Immunity Act.

One such section is section 2—202, which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—202 (West 1992). This section immunizes liability for negligence and expressly does not immunize liability for willful and wanton misconduct. According to Barnett, sections 2—202 and 3—108(a), "when analyzed together, do not provide immunity from lawsuits brought under a theory of willful and wanton misconduct." Since she alleged willful and wanton misconduct in this case, Barnett concludes that the District was not immune from liability and was not entitled to summary judgment.

Barnett's reliance on section 2—202 is misplaced. Section 2—202 is not a general exception to all of the other immunities established by the Tort Immunity Act. That section expressly immunizes a public employee from liability only for the employee's negligent "act or omission in the execution or enforcement of any law." 745 ILCS 10/2—202 (West 1992). Based on this plain

language, this section does not grant immunity for every act or omission of public employees while on duty. *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991), citing *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 33 (1972). Rather, section 2—202 provides immunity only where the public employee is negligent while *actually* engaged in the execution or enforcement of a law. *Arnolt*, 52 Ill. 2d at 33.

In the present case, the District's lifeguards were not executing or enforcing a law in any sense. Neither the Illinois Department of Public Health regulations (77 Ill. Adm. Code § 820.300 *et seq.* (1988 Supp.)) nor their enabling statute (210 ILCS 125/1 *et seq.* (West 1992)) prescribe how a lifeguard should supervise a swimming pool. Rather, the regulations only prescribe when and how many lifeguards are necessary and their qualifications. The lifeguards in the present case were simply on duty. They were not actually executing or enforcing any law during the course of their supervision of the Port Shiloh swimming pools. Consequently, section 2—202 does not apply to this case.

Section 2—202 aside, Barnett also alleges that the Tort Immunity Act generally does not establish unconditional immunity, but rather provides an exception for willful and wanton misconduct. Thus, according to Barnett, section 3—108 does not immunize liability for willful and wanton misconduct and the District is not entitled to summary judgment.

We disagree. The plain language of section 3—108 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct. Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. See 745 ILCS 10/2—202, 2—210, 3—106, 3—109(c)(2), 4—105, 5—103(b), 5—106 (West 1992). Since the legislature omitted such a limitation from the plain language of section 3—108, then the legislature must have

intended to immunize liability for both negligence and willful and wanton misconduct. See *West*, 147 Ill. 2d at 6-7; *Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 785-87 (1994).

*Supervision*

Barnett next argues that the District failed to provide Travis with the "supervision" that section 3—108 requires. It is undisputed that the District satisfied state public health regulations in terms of the number of lifeguards present and their qualifications. However, Barnett claims that the supervision required by section 3—108 "explicitly implies the existence of a requisite degree of competence and active control." She argues that the supervision provided by the lifeguards was so deficient that it constituted not only willful and wanton misconduct, but also "a complete failure to provide supervision."

We agree with the appellate court that Barnett "attempts to apply a substantial limitation on the immunity of section 3—108(b) where none exists." 267 Ill. App. 3d at 289. The plain language of section 3—108(b) unambiguously does not require any particular level or degree of "supervision." The legislature omitted from the plain language of section 3—108 any reference to the quality of supervision required thereunder. Thus, the legislature must have intended to provide unconditional immunity for liability when supervision is provided. See *West*, 147 Ill. 2d at 6-7.

Indeed, Barnett's interpretation of section 3—108(b) would effectively nullify it. If section 3—108(b) immunized only nonnegligent conduct, then there would be no need for immunity because the conduct would not be actionable in the first place. The fact that the legislature established immunity in section 3—108(b) means that otherwise actionable conduct, *i.e.*, inadequate supervision, was to be covered.

Barnett cites *Blankenship* in support of her argument. In that case, the appellate court held that section 3—108(b) did not immunize the defendant park district because the lifeguards at the pool facility were off duty, not physically present at the pool, and not in a position to see the pool. *Blankenship*, 269 Ill. App. 3d at 418-19, 424. The appellate court held that "[t]his was not mere inattention or a momentary lack of vigilance; it was a complete absence of supervision." *Blankenship*, 269 Ill. App. 3d at 424.

This case is distinguishable from *Blankenship*. Here, the District provided lifeguards, as state public health regulations prescribe, who were not only physically present, but were actually supervising the deep pool. Thus, section 3—108(b) applies and immunizes the District from liability. See *Burdinie*, 139 Ill. 2d at 513-14.

Lastly, we note that the appellate court in this case and in *Payne* urged the legislature to articulate what constitutes "supervision" under the Act or to remove willful and wanton misconduct from section 3—108(b) immunity. *Payne*, 268 Ill. App. 3d at 787; *Barnett*, 267 Ill. App. 3d at 290. We join the appellate court in this request.

After carefully reviewing the entire record, we conclude that the record contains no genuine issues of material fact. Further, given the full immunity provided by the legislature in the unconditional language of section 3—108 of the Tort Immunity Act (745 ILCS 10/3—108 (West 1992)), we conclude that the District is entitled to a judgment as a matter of law.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HARRISON, dissenting:

The law should be a haven for children. In the hands of my colleagues, it is becoming a place of despair. The

majority has taken the plain and unambiguous language of section 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—108 (West 1992)) and given it a meaning that the legislature could never have imagined. Under its analysis, any child patronizing a public pool during the posted hours of operation does so entirely at his own risk, for the lifeguards have no obligation to help him. Should he falter in the water, they are free to stand by and do nothing. They are free to let him drown.

One of the most perplexing experiences I have had as a member of this court is trying to understand why my colleagues refuse to reasonably interpret the law when a child of tender years is involved. There have been other examples (see, *e.g., Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995)), but this is the most extreme. It is so extreme that one is tempted to see it as the product of a deliberate corruption of the statute. What possible justification my colleagues could have for such conduct eludes me. I, for one, can conceive of no legitimate policy reason that would excuse the kind of death suffered by Travis Barnett.

As the majority's summary of the facts indicates, Travis lost his life in a tragic and completely avoidable accident at a swimming pool operated by the Zion Park District. In her complaint, Travis' mother, Rebecca Barnett, alleged that the District should be held liable for his death because it

"(a) Failed to initiate lifesaving procedures to [rescue Travis] after being told by another patron of the pool that [he] had slipped, [fallen] and struck his head on a diving board and dropped into the water;

(b) Did not initiate lifesaving procedures to [rescue Travis] after being told by another patron of the pool that [Travis] was drowning;

(c) Did not initiate lifesaving procedures to [rescue Tra-

vis] after being told by another person at the pool that [Travis] was having trouble swimming."

In seeking and obtaining summary judgment, the District argued that Barnett could not prevail on these claims as a matter of law because it was immune from suit under section 3—108(b) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—108(b) (West 1992)). That statute provides that

"Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." 745 ILCS 10/3—108(b) (West 1992).

The District contends that the statute bars Barnett's action because the District constitutes a "local public entity," the pool is a "part of public property [designated] to be used for purposes of swimming," the District established hours for the pool's use and posted those hours on the premises, and lifeguards were on duty during the posted hours. According to the District, the degree of care exercised by the lifeguards in performing their duties was irrelevant. Even if they were totally derelict, liability would still not attach. As long as lifeguards were physically present on the premises when Travis drowned, the supervision requirement of section 3—108(b) was satisfied.

In support of its position, the District cites *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 513-14 (1990). In *Burdinie*, this court held that a park district was immune from suit by a member of a swimming class who alleged that he injured his foot when the instructor, "negligently and in ignorance and disregard for [the plaintiff's] safety and health," (*Burdinie*, 139 Ill. 2d at 512) told him to jump into the shallow end of the pool.

The court based its decision on various sections of the Local Governmental and Governmental Employees Tort Immunity Act, including section 3—108(b). With respect to that provision, the court held that because "the swimming activity plaintiff participated in was supervised" the park district was immune under section 3—108(b) even though the person responsible for watching over the plaintiff, *i.e.*, the swimming instructor, was alleged to have been derelict in performing his duties.

*Burdinie* has now been overruled in part by *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 129-30 (1994). Because *McCuen* did not involve any section 3—108 issues, our court had no occasion in that case to consider the question of whether *Burdinie*'s discussion of the statute remained valid. In my view, however, *Burdinie*'s application of section 3—108(b) was erroneous and must be overruled as well.

Since the abolition of sovereign immunity, governmental units are liable in tort on the same basis as private tortfeasors unless the General Assembly promulgates a valid statute imposing conditions on their liability. The Local Governmental and Governmental Employees Tort Immunity Act is the legislature's attempt to create certain uniform rules of immunity as exceptions to the general rule of municipal liability. Because the Act is in derogation of the common law action against local public entities, it must be strictly construed against the public entity involved. *Aikens v. Morris*, 145 Ill. 2d 273, 277-78 (1991).

Adherence to this principle requires that we reject the notion that "failure to provide supervision" occurs within the meaning of section 3—108(b) (745 ILCS 10/ 3—108(b) (West 1992)) only where there is a complete absence of supervision at a pool, *e.g.*, where a park district provides no lifeguards at all during the pool's posted hours or where the lifeguards provided leave the

pool area and are not in a position to observe the swimmers, as in *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416 (1994). If the statute is to have any real meaning, "failure to provide supervision" must also be construed to embrace situations where the supervision provided is inadequate, as Barnett charges here.

There is no merit to my colleagues' complaint that if inadequate supervision can subject a public entity to liability, the whole purpose behind section 3—108(b)'s immunity would be lost. A fundamental flaw in their analysis is that it interprets section 3—108(b) as if that is what establishes the public entity's basic immunity. As even a cursory reading of the statute shows, the general immunity for failure to supervise is actually specified by section 3—108(a) of the Act, not section 3—108(b).

What section 3—108(b) does is to qualify the basic immunity contained in section 3—108(a) and create an exception to it. There is nothing ambiguous about the legislature's intention. If we look at the plain language of section 3—108(b), it is clear that the point of that provision is not to free public entities from the responsibility for providing supervision that is adequate, but simply to specify when the duty to provide supervision will be imposed. The idea is no more complicated than this. Where the public entity has posted designated hours for the use of designated swimming areas, its duty to provide supervision will be limited to the hours it has posted. If a person is injured at any other time, a failure to supervise claim is absolutely precluded, as section 3—108(a) of the Act specifies, regardless of the factual circumstances.

When a duty to supervise will be imposed under the law is separate and distinct from the question of what standard of care is required once the duty to provide supervision has attached. That is the question that concerns us today, and it can have only one reasonable

answer. The duty to supervise must be construed to mean a duty to provide supervision that is adequate. Otherwise, public entities could cloak themselves with immunity merely by providing nominal oversight. As long as someone was present to watch the pool, the statute would be satisfied.

Under such a construction, it would not matter that the number of guards assigned to the pool was too small to observe all of the swimmers, or that the guards had no experience or training in water safety. Indeed, it would not matter if the guards could not even swim. And if they could swim, they would not be obliged to actually enter the pool even if the distress of a swimmer was apparent to them. There would be no exception for willful and wanton misconduct. The guards could stand by and watch someone drown before their eyes, and still the public entity would be immune.

The legislature could not have intended such an absurd, unjust and unreasonable result. If this were all that was required, there would have been no need to even include the supervision provision. That portion of the statute would have no practical effect.

It is axiomatic that courts should avoid construction of a statute that would render any word or phrase meaningless or superfluous. *Kraft, Inc. v. Edgar,* 138 Ill. 2d 178, 189 (1990). Because the statute is capable of another interpretation that avoids these problems, the more reasonable interpretation is the one we must follow. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund,* 155 Ill. 2d 103, 110 (1993). Accordingly, contrary to what we may have indicated in *Burdinie,* the mere presence of a lifeguard or other supervisory personnel during posted hours at a public swimming pool should not be sufficient to immunize the public entity from liability under section 3—108(b) of the Local Governmental and Governmental Employees

Tort Immunity Act. As previously indicated, the public entity should be required to provide supervision that is adequate before it is permitted to avail itself of the statute's immunity.

In the case before us, Barnett has plainly alleged that the District did not meet its duty to provide adequate supervision during the designated hours posted for use of the pool. According to her allegations, the supervision provided by the District was grossly inadequate. Based on the evidentiary material and pleadings on file, a genuine issue remains as to that question, and we cannot say that the District is entitled to judgment as a matter of law pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)). The judgment of the appellate court affirming the entry of summary judgment in favor of the District should therefore be reversed, and the cause should be remanded to the circuit court of Lake County for further proceedings.

JUSTICE McMORROW, also dissenting:

I agree with Justice Harrison that the majority's opinion in the case at bar misconstrues the scope of the immunity prescribed by section 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—108 (West 1992)). However, I write separately to emphasize my belief that irrespective of whether the District may be deemed immune from simple negligence in connection with its supervision of swimming activities (see *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501 (1990)), I cannot agree that section 3—108 provides immunity from willful and wanton misconduct of government entities or employees. There is a qualitative difference between mere lapses in attention or performing a lifeguarding function in a negligent manner and a *deliberate or willful disregard of pleas for help*.

According to the facts set out in the majority's opinion, two different District lifeguards were notified by two different swimming pool patrons that 10-year-old Travis Barnett was injured and in need of immediate assistance. The lifeguards refused to respond to this alert, which may have caused a critical delay in the efforts of others to rescue the boy. Travis remained in the water for several minutes before a man dove in and pulled him from the water. At that point a lifeguard attempted to revive Travis, but he died shortly thereafter. The failure of the lifeguards to respond to the pleas for help negates the very essence of the lifesaving function: taking immediate action upon notice that someone is in trouble and in danger of drowning. Here, the child slipped on the diving board located at the deep end of the pool, hit the back of his head, and sank into the water. Although several patrons saw this happen, apparently none of the 11 lifeguards on duty noticed that Travis was drowning. Because they did not actually witness the incident themselves, the lifeguards who were specifically notified of Travis' plight chose to dismiss the eyewitnesses' summons rather than investigate.

I submit that a jury could find the above alleged conduct indicative of an "utter indifference to or conscious disregard for the safety of others." See 745 ILCS 10/1—210 (West 1992) (defining willful and wanton misconduct); *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267 (1994). The failure of the District's employees to respond to a potentially life-or-death situation for which lifeguards are specifically trained is not a matter of simple negligence. Surely parents who leave their children to swim in pools with lifeguards in attendance may reasonably expect that if their children are injured and in danger in the water, and this is brought to the attention of a lifeguard, the lifeguard will respond in some manner other than merely assuming the call for rescue is a

childish prank. It is difficult to believe that the legislature intended to immunize the type of conduct alleged in the complaint in the instant case.[1]

Providing qualified lifeguards to supervise the activities at public swimming pools is a laudatory measure that most likely minimizes the number of serious swimming injuries occurring at such pools. I recognize that public entities should not be considered absolute insurers for all injuries occurring at public swimming pools. However, even assuming that section 3—108 extends immunity to deficient or inadequate supervision, it does not follow that willful and wanton misconduct is additionally immunized. See, e.g., *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629 (1995). In my view, the majority's rationale reflects a sincere but misguided effort to construe section 3—108 as a clear-cut immunity rule capable of easy application. To reach its goal, however, the majority inverts basic principles of statutory construction and disregards the long tradition of the common law. Therefore, as explained below, I dissent from the majority's holding that section 3—108 confers an absolute grant of immunity, notwithstanding

---

[1]Plaintiff's brief includes transcribed excerpts from the General Assembly's debate over the tort reform legislation of 1986, which included, in Senate Bill 1200, amendments to the Local Governmental and Governmental Employees Tort Immunity Act. Although it appears that none of the various immunities were specifically identified in the debate, the following comment by the bill's sponsor provides an insight into the legislators' general intent: "Our first concern was that of local government. Article I of Senate Bill 1200 addresses changes in local government immunity. *** This amendment puts kids back in the parks. It puts Saturday's heroes back in the high school football playing field. *And yet, it makes sure that communities will still be liable for wanton and willful conduct that disregards, with conscious indifference, the safety of its citizens.*" (Emphasis added.) 84th Ill. Gen. Assem. House Proceedings, June 30, 1986, at 6 (statements of Representative Greiman).

willful and wanton misconduct, based either on the statutory language itself or by judicial interpretation of the legislature's silence in defining "supervision."

According to the majority, the "plain language of section 3—108 is unambiguous" on the issue of willful and wanton misconduct. The majority contends that the absence of an explicit exception for willful and wanton misconduct means that "the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct." 171 Ill. 2d at 391-92. I cannot agree that the language of section 3—108 encompasses such a broad and unlimited immunity. On its face, section 3—108 does not refer to either negligence or willful and wanton misconduct, nor does the statute distinguish between the two types of conduct. Instead, section 3—108(a) codifies a general rule of no liability for failure to supervise activities on public property and section 3—108(b) exempts swimming pool operators from the immunity, but exempts only to the extent of failing to "provide supervision" during posted hours of operation. The majority's holding that the statute facially expresses a clear and unambiguous intent to include willful and wanton misconduct in the scope of the immunity is untenable.

The majority's summary conclusion that willful and wanton misconduct is automatically included within a statutory immunity provision, absent an express exemption for such conduct, is a surprising and worrisome departure from traditional principles of Illinois tort law. In fact, the majority opinion cites no authority from this court that supports such an inference. *West v. Kirkham*, 147 Ill. 2d 1 (1992), is cited by the majority for the proposition that the legislature's failure to expressly exclude willful and wanton conduct establishes its intent to immunize such conduct. However, *West* involved no issue of willful and wanton conduct and is

wholly inapposite. In *West,* the issue was whether the defendant city was liable for its failure to initially construct traffic improvements when notified of the need for traffic signals or other improvements at a particular location. This court answered that question in the negative, noting that section 3—104 of the Tort Immunity Act expressly states that there is no liability for "failure to initially provide regulatory traffic control devices." *West,* 147 Ill. 2d at 5. This court further observed that no duty at common law was imposed upon a municipality to create public improvements, although once improvements were made the municipality had a duty to maintain improvements in a reasonably safe condition. *West,* 147 Ill. 2d at 14.

The *West* court's discussion of duty highlights a key distinction between that case and the case at bar: in *West,* there was no *duty* to initially install traffic signals, either at common law or by statute, and therefore there could be no *liability* on the part of the government entity for either negligent or willful and wanton failure to initially provide traffic devices. In the instant case, however, the majority expressly recognizes that "the District owed Travis a common law duty of reasonable care." 171 Ill. 2d at 387. It thus becomes apparent that the *West* decision, which involved a different statutory immunity provision and different common law principles regarding duty, does not support the majority's effort to construe section 3—108 as an absolute immunity.

There are strong reasons why the policies underlying grants of immunity for simple negligence should not be impliedly expanded to reach willful and wanton or intentional misconduct. The traditional workings of government involve a myriad of situations in which people may be injured because of negligence on the part of public entities or officials carrying out their government duties. The general rationale for granting public

entities the protection of immunities not enjoyed by private entities is the significant expense and burdens placed upon the government when lawsuits are permitted to flourish unchecked. However, the rationale underlying a grant of immunity for simple negligence is different in kind from any justification for immunizing tortious conduct that is intentionally harmful or willful and wanton. See, *e.g.*, *Barth v. Board of Education*, 141 Ill. App. 3d 266, 273-74 (1986). Accordingly, if the legislature actually intended to venture beyond the traditional negligence-based immunities and extend protection to public entities and employees for conduct which demonstrates utter indifference to or conscious disregard of the safety of others, the immunity statute in issue should positively state such intention.

Illinois case law reveals that the Tort Immunity Act is not ordinarily viewed as shielding willful and wanton misconduct. Indeed, this court has in the past implicitly acknowledged that the scope of section 3—108(b) does not extend to willful and wanton misconduct in the supervision of swimming activities. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501 (1990), overruled in part on other grounds, *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 129-30 (1994). In *Burdinie*, a case involving an injury allegedly caused by the negligence of a swimming instructor, this court expressly distinguished the facts from those in which plaintiffs plead intentional or willful and wanton conduct in connection with a swimming pool injury. In contrast, in the case at bar, plaintiff persuasively sets forth conduct that may be characterized as the lifeguards' willful and wanton failure to respond to repeated warnings of a patron's imminent drowning. The majority, however, does not acknowledge or discuss *Burdinie*'s implicit recognition that willful and wanton misconduct removes a tort claim from the scope of section 3—108's immunity. Decisions

of the appellate court have assumed that section 3—108 does not immunize conduct that is willful and wanton. See *Gilmore v. City of Zion*, 237 Ill. App. 3d 744, 750-52 (1992); *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1099-1101 (1989); *Keller v. Board of Education of Jonesboro School District 43*, 68 Ill. App. 3d 7, 9-10 (1978); but *cf. Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 785-86 (1994); *Jefferson v. Sheahan*, No. 1—95—3161 (Ill. App. March 29, 1996).

It is true, as the majority observes, that certain provisions of the Tort Immunity Act expressly exempt willful and wanton conduct from the scope of a particular immunity; from this premise, the majority argues, the legislature would have included similar language in section 3—108 if it had not intended to immunize willful and wanton misconduct. I am not persuaded, however, that this court must draw a negative inference regarding the intended scope of section 3—108 by relying on other dissimilar provisions of the Tort Immunity Act. The conditions placed on liability in one section of the Tort Immunity Act do not transport well to a different section that involves separate and distinct concerns. For example, a seemingly unqualified statutory immunity insulating public entities and employees for "failure to initially [construct] traffic control devices" (745 ILCS 10/3—104 (West 1992)) or the failure to "establish a fire department or otherwise provide fire protection" (745 ILCS 10/5—101 (West 1992)) cannot be fruitfully compared with a limited immunity for negligence based on the "existence of a condition of any public property intended or permitted to be used for recreational purposes" (745 ILCS 10/3—106 (West 1992)) or one based on a public official's "execution or enforcement of any law" (745 ILCS 10/2—202 (West 1992)). Similarly, an immunity statute which shields school teachers from li-

ability in negligence arising out of the discipline and supervision of students is distinguishable from the grant of immunity allowed for the willful and wanton misconduct alleged in this case. The school teachers' statute recognizes the common law *in loco parentis* doctrine, which is the derivation of the limited immunity, but contains no express exclusion of willful and wanton misconduct. The courts have nevertheless viewed the statute as exempting such conduct from the immunity provided. See, *e.g., Knapp v. Hill*, 276 Ill. App. 3d 376, 382 (1995) (the "General Assembly has long provided teachers *** with limited immunity from civil actions based upon negligence absent wilful and wanton misconduct"), citing 105 ILCS 5/24—24, 34—84a (West 1992).

These various tort immunity statutes encode vastly different concerns rooted in distinct common law principles. Singly or collectively, these immunities shed dim light on the legislature's intent in drafting section 3—108. It appears, therefore, that the majority sets this court on a path filled with pitfalls in suggesting that reliance on scattered provisions of the Tort Immunity Act "unambiguously" supports a "plain terms" construction of section 3—108 so as to immunize willful and wanton misconduct in the supervision of swimming pools.

The majority's construction of section 3—108 as conferring a blanket immunity for "supervised" swimming pools also runs counter to article XIII, section 4, of the Illinois Constitution of 1970. This section abolished sovereign immunity in its entirety, *except* as *specifically* provided by the legislature. Ill. Const. 1970, art. XIII, § 4. To best effectuate the constitutional provision, Illinois courts should refrain from reading into the immunity of section 3—108 broader coverage than is reasonably intended by its terms. As acknowledged by the majority, unless a statute specifically grants an im-

munity, governmental conduct is subject to the same common law rules of tort liability as that of private parties. *E.g.*, *LaMonte v. City of Belleville*, 41 Ill. App. 3d 697, 705 (1976); see *List v. O'Connor*, 19 Ill. 2d 337 (1960); see also *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 336 (1995) (Freeman, J., specially concurring) (following adoption of the 1970 Constitution, "[t]he rule of governmental tort liability could be avoided only by express grant of statutory immunity"). This court has repeatedly noted that the Tort Immunity Act is in derogation of the common law and should be strictly construed against the government unit seeking immunity. *E.g.*, *Curatola v. Village of Niles*, 154 Ill. 2d 201 (1993); *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991). Therefore, where a provision of the Tort Immunity Act is *silent* on the question of whether willful and wanton misconduct is exempt from the scope of the immunity in issue, we should not assume, as the majority does here, that such legislative silence translates into a positive or unambiguous intent to grant unconditional immunity.

This court has often recognized the need to construe a particular immunity statute narrowly, with a view to preserving tort liability except where the legislature expressly abridges it. For example, in *Aikens v. Morris*, 145 Ill. 2d 273 (1991), section 2—202 of the Tort Immunity Act was analyzed. On its face, section 2—202 excludes only willful and wanton misconduct from the immunity accorded to police officers in the "execution and enforcement" of laws. Therefore, immunity for simple negligence would appear to be absolute. However, after carefully examining the statutory language and reviewing pertinent case law, this court concluded that not every negligent act of a police officer performing routine duties was covered by the immunity of section 2—202. In the case at bar, the majority avoids undertaking a similar in-depth analysis of section 3—108 to

ascertain the scope of, or limitations upon, the District's duty to provide supervision for swimming activities.

Other recent decisions of this court also have recognized that some forms of governmental negligence may be actionable notwithstanding the grant of an immunity for negligence. See *Leone v. City of Chicago*, 156 Ill. 2d 33 (1993) (holding that special duty doctrine as a theory of negligence liability exists apart from and is not precluded by section 2—202 immunity); *Bubb v. Springfield School District 186*, 167 Ill. 2d 372 (1995) (negligence immunity arising from condition of public property used for recreational purposes is not a *per se* rule of negligence immunity extending to all school property but must instead be applied on a case-by-case examination of the property and its use); see also *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 129 (1994) (holding that section 3—106 immunity for condition of public property used for recreation does not apply to the allegedly negligent conduct of a public employee). The above authorities cast doubt on the validity of the majority's analysis of section 3—108.

Although my dissent has focused primarily upon the willful and wanton misconduct issue, I note briefly my agreement with Justice Harrison that the majority's interpretation of what constitutes "supervision" is unsatisfactory. As the case law indicates, this court ordinarily engages in a searching and nuanced evaluation of specific governmental tort liabilities and immunities. In the case at bar the majority simply announces that because the Park District "provided supervision" under section 3—108(b), since lifeguards were present and working during the hours posted, and plaintiff was injured during the supervised hours, an absolute bar of immunity obtains. The majority opinion states that the language of section 3—108(b) "unambiguously does not require any particular level or degree of 'supervision.'

The legislature omitted from the plain language of section 3—108 any reference to the quality of supervision required thereunder. Thus, the legislature must have intended to provide unconditional immunity for liability when supervision is provided." 171 Ill. 2d at 392.

Unlike the majority, I believe that the key question in the case at bar is whether the immunity of section 3—108 bars plaintiff from maintaining this action alleging the District's breach of its duty to Travis, proximately causing his death, because the District's lifeguards were informed of the child's injury and imminent risk of drowning, but took no action whatsoever to rescue the boy. Under these facts, was "supervision," as commonly understood, in fact provided? *Cf. Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416 (1994) (total absence of lifeguards during "adult swim" constituted lack of supervision). Alternatively, assuming that the immunity of section 3—108 extends to inadequate or negligent supervision of swimming activities, does plaintiff's showing of the nonresponsive conduct of the supervising lifeguards entitle plaintiff to recover damages based on willful and wanton misconduct? The answers to these inquiries involve issues of fact not appropriate for summary judgment.

I would hold that, in the specific facts of this case, the complaint adequately alleges a willful and wanton failure to supervise, and that the cause of action is not barred by section 3—108. This approach would not undermine the intent of the legislature to generally immunize local government units for their failure to provide supervision for activities taking place on public property under section 3—108(a). Section 3—108(b) contemplates that the immunity for failure to supervise shall not apply to publicly maintained swimming pools during regular hours of operation. This statute reflects a reasonable balance of competing legislative concerns—

removing the burden of innumerable lawsuits against local government units for not supervising all activities on public property, yet treating public swimming areas as an exceptional situation based on the type of activity and risks associated with such activity. As the instant case demonstrates, in those situations involving conduct that is willful and wanton, or amounts to no supervision at all under the particular facts, the rationale for granting an unconditional immunity under section 3—108(b) loses force and persuasion.

For the foregoing reasons, I respectfully dissent.