WILLIAM BLANKENSHIP, Adm'r of the Estate of Sherill L. Blankenship, Plaintiff-Appellant, v. THE PEORIA PARK DISTRICT *et al.*, Defendants-Appellees.

Third District No. 3—93—0953

Opinion filed September 23, 1994.—Modified on denial of rehearing February 27, 1995.

BRESLIN, J., dissenting in part.

Chester C. Fuller, of Peoria, for appellant.

David S. Collins, of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (R. Michael Henderson, of counsel), for appellees.

Steven J. Kleinman, of Park District Risk Management, of Wheaton, for Peoria Park District.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

Sherill L. Blankenship (the decedent) drowned while swimming in a pool owned by defendant board of education, Peoria School District 150 (the School District), and operated by defendant Peoria Park District (the Park District). Plaintiff William Blankenship, as administrator of decedent's estate, filed a two-count complaint pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 0.01 *et seq.*) alleging that defendant's failure to supervise the pool caused the decedent's death. The trial court dismissed count I, finding that the Park District owed no duty to the decedent and that, even if a duty had existed, the Park District was granted immunity by section 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—108). Thereafter, the court granted the School District's motion for summary judgment with respect to count II and this appeal followed.

For purposes of determining whether count I was properly dismissed, we deem admitted all well-pleaded facts contained in plaintiff's second amended complaint. (See *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 569 N.E.2d 248.) Plaintiff alleged that decedent was participating in a public swim sponsored by the Park District for which she paid an admission fee. Plaintiff further alleged that the Park District had promulgated rules and regulations which required a lifeguard to be present at all times when the pool was in use during posted hours. These rules required the lifeguard to watch, direct and safeguard swimmers. According to the complaint, on the day the decedent drowned at least three lifeguards were working at the pool. Five to ten minutes before the decedent drowned, the lifeguards cleared the pool to allow for five minutes of "adult swim." The Park District's rules provided that the lifeguards could use this time for "breaks" but one lifeguard should remain on duty. Plaintiff alleged that all of the lifeguards went into a small room adjacent to the pool

where they were unable to see the pool. The decedent, the only adult swimming in the pool during the adult swim, struck her head while diving and floated face down in the water for two to three minutes before someone noticed her and ran to get the lifeguards. Plaintiff alleged that the Park District was negligent in that it: (1) failed to properly watch, supervise and control the decedent; (2) failed to warn that the pool was not going to be watched; (3) failed to notice decedent and administer artificial respiration in a timely manner; and (4) failed to prevent the decedent from diving into the pool.

Plaintiff contends that the trial court erred in finding that the Park District owed no duty to the decedent. Plaintiff argues that a duty to supervise arises under section 3—108(b) of the Tort Immunity Act or, alternatively, that defendant owed the decedent a common law duty of care. Section 3—108 provides:

> "§ 3—108. (a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.
>
> (b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours of such use, the entity or public employee *is liable only for an injury proximately caused by its failure to provide supervision* during the said hours posted." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 85, par. 3—108.

Plaintiff maintains that the language emphasized above imposes a duty on local public entities to provide supervision during posted hours. We disagree. Section 1—101.1 of the Tort Immunity Act states that the purpose of the Act "is to protect local public entities and public employees from liability arising from the operation of government. It grants *only* immunities and defenses." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101.1.) Moreover, the courts of this State have repeatedly held that "the Act does not create any new liabilities for negligent acts or omissions which did not previously exist, but rather articulates the common law duty to which the subsequently delineated immunities apply." (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 412, 583 N.E.2d 538, 542 (citing cases).) We find, therefore, that section 3—108(b) of the Tort Immunity Act did not impose a duty on the Park District to supervise the activities at the pool.

We next consider whether the Park District owed a common law duty of care to plaintiff. Plaintiff relies on *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023, and *Brumm v. Goodall* (1958), 16 Ill. App.

2d 212, 147 N.E.2d 699, to establish the existence of such a duty. In *Cope*, the supreme court held that a retention pond at an apartment complex presented an obvious risk of drowning such that no duty of care was owed to a seven-year-old boy who had drowned there. In distinguishing the facts presented in *Cope* from cases involving swimming pools, the court stated:

"Our courts and the legislature have traditionally regarded public swimming pools differently from other bodies of water. (See Ill. Rev. Stat. 1981, ch. 111$^{1}$/$_{2}$, par. 1201 *et seq.*) The law in Illinois does place a duty upon private operators of public swimming pools or public bathing resorts to take precautions for the safety of their patrons. As expressed by the court in *Decatur [Amusement Park Co. v. Porter* (1907), 137 Ill. App. 448]*, it is inevitable that injuries will occur at public bathing facilities, and the law imposes a duty to guard against the character of accidents which 'common knowledge and experience teach are liable to befall those engaging in the sport which [defendant] had invited the public to participate in.' (*Decatur Amusement Park Co. v. Porter* (1907), 137 Ill. App. 448, 452.)" *Cope*, 102 Ill. 2d at 288, 464 N.E.2d at 1028.

In *Brumm*, a 14-year-old boy drowned at a public pool operated by a private individual. Although three lifeguards were on duty at the time the boy drowned, the court affirmed a jury verdict in favor of plaintiff, holding that there was sufficient evidence presented from which a jury could find that there were not enough lifeguards on duty or that they did not keep a proper lookout. With respect to the defendant's duty, the court stated: "That the defendant was under a legal duty to make reasonable provisions and to take reasonable precautions to provide for the safety of his patrons can hardly be disputed." *Brumm*, 16 Ill. App. 2d at 224-25.

The Park District denies that any common law duty required it to supervise adult swimmers or provide lifeguards to protect them. The Park District relies on *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 578 N.E.2d 999, in which the court held that the Chicago Park District did not owe a duty to a 22-year-old mentally handicapped drowning victim. The *Brown* court noted the "common law rule that a governmental body exercising its governmental authority for a governmental purpose is generally not liable to a private plaintiff for the allegedly negligent exercise of said authority." (*Brown*, 218 Ill. App. 3d at 616, 578 N.E.2d at 1001.) The *Brown* court then reasoned that its decision was controlled by *Gebhardt v. Village of La Grange Park* (1933), 354 Ill. 234, 188 N.E. 372, in which the supreme court held that a municipality was not liable for negligence arising out of the operation of a swimming pool because

"in so doing the village was engaged in a governmental and not a proprietary function" and was therefore immune. *Gebhardt,* 354 Ill. at 239-40.

■ We decline to follow *Brown* because we believe that its decision, as well as that in *Gebhardt,* rests upon the discarded doctrine of sovereign immunity. That doctrine as it applied to school districts was abolished in 1959 by *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89. Approximately six months later, the supreme court held that the nonimmunity rule announced in *Molitor* also applied to park districts. (See *List v. O'Connor* (1960), 19 Ill. 2d 337, 167 N.E.2d 188.) The *List* court noted that the lower court's finding of immunity in that case was based on *Gebhardt* and on a determination that the maintenance and operation of parks was a governmental function. The *List* court disapproved such an analysis, stating:

> "[T]he decision in the *Molitor case,* in discussing the doctrine of sovereign immunity, dismisses as immaterial any distinction between governmental or proprietary functions, observing that efforts to classify municipal functions have resulted in incongruities and that attempts to fit particular conduct into one or the other of these categories have met with frequent adverse comments." *List,* 19 Ill. 2d at 340.

It is important at this point to recognize that the existence of a *duty* and the existence of *immunity* are separate and distinct issues. Sovereign immunity, which was the basis for the court's holding in *Gebhardt,* has been abolished by both *Molitor* and by the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 4). We believe, therefore, that the *Brown* court's reliance on *Gebhardt* to support a finding that the defendant owed no duty was misplaced. Since *Molitor,* "[g]overnmental units are liable in tort on the same basis as private tort-feasors unless a valid statute dealing with tort immunity imposes conditions upon that liability." (*LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 705, 355 N.E.2d 70; see also *Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 289 N.E.2d 481.) Accordingly, we find that the Park District owed a duty "to take precautions for the safety of [the] patrons" of the swimming pool. (*Cope,* 102 Ill. 2d at 288, 464 N.E.2d at 1028.) This finding does not, however, complete the inquiry into the defendant's duty. A further question is whether the scope of the Park District's duty includes providing supervision for *adult* swimmers. After careful consideration, we hold that it does not, for three reasons.

■ First, plaintiff has not cited, nor has our research revealed, a single Illinois case imposing liability for injuries suffered by an adult

due to lack of supervision at a swimming pool. The *Cope* and *Brum* cases relied on by plaintiff both involved minors. In addition, the *Decatur Amusement* case cited in *Cope* also involved a minor. While this lack of precedent with respect to adult swimmers is not dispositive of the duty issues, we deem it significant.

Second, we find highly persuasive the Park District's argument that the administrative regulations promulgated pursuant to the Swimming Pool and Bathing Beach Act (Ill. Rev. Stat. 1991, ch. 111$^{1}/_{2}$, par. 1201 *et seq.*) define the scope of its duty to supervise. Those regulations require lifeguards only at swimming pools which allow persons 16 or under to enter "without a responsible person 17 years of age or older present" (77 Ill. Adm. Code § 820.300 (1985)). Thus the Illinois legislature and the Department of Public Health have expressed their judgment that adult swimmers are not in need of the protection provided by lifeguards. We also note that our supreme court cited to the Swimming Pool and Bathing Beach Act in support of its statement in *Cope* that the courts and legislature "have traditionally regarded public swimming pools differently from other bodies of water." (*Cope*, 102 Ill. 2d at 288, 464 N.E.2d at 1028.) It would appear that the difference referred to in *Cope* has traditionally been limited to situations involving minors, not adult swimmers.

Finally, under standard duty analysis, the plaintiff's status as a minor or an adult *should* make a difference. Factors ordinarily considered in determining the existence of a duty include the foreseeability of injury, the likelihood and potential seriousness of the injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. (*Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239.) It seems clear that the foreseeability and likelihood of injury would be substantially less for a responsible adult swimmer than for a child.

We hold, therefore, that the Park District's common law duty to supervise the patrons of its swimming pool does not extend to adult swimmers such as the decedent in this case. Furthermore, we reject plaintiff's argument that a duty arises from the Park District's internal rules which required at least one lifeguard to remain on duty during the adult swim period. While the violation of a *statute* or *ordinance* designed to protect human life or property is *prima facie* evidence of negligence (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93; *O'Neil v. Krupp* (1992), 226 Ill. App. 3d 622, 589 N.E.2d 185), "a legal duty is normally not established through rules *** or internal guidelines" (*Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 238, 507 N.E.2d 1193,

1198), and "[t]he failure to comply with self-imposed regulations does not necessarily impose upon municipal bodies and their employees a legal duty" (*Dezort v. Village of Hinsdale* (1976), 35 Ill. App. 3d 703, 708, 342 N.E.2d 468). See also *Davis*, 64 Ill. 2d at 390, 356 N.E.2d at 97 (holding that in addition to statutes and ordinances, violations of administrative rules and regulations could be considered as evidence of negligence "*provided they are validly adopted and have the force of law*)." (Emphasis added.)

Finally, we consider plaintiff's argument that the Park District voluntarily assumed a duty to protect the decedent by stationing lifeguards at the pool. Section 323 of the Restatement (Second) of Torts states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965).

See *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557.

There are no facts alleged in plaintiff's complaint suggesting that by providing lifeguards the Park District increased the risk of harm to decedent. The decedent was not injured by an improper rescue technique or by a faulty effort at resuscitation. All of plaintiff's allegations of negligence involve omission, or nonfeasance, rather than misfeasance. Therefore, to state a cause of action under a theory of voluntary undertaking in this case, the plaintiff must plead facts establishing decedent's reliance upon the undertaking. Restatement (Second) of Torts § 323(b) (1965); see *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 418-19, 583 N.E.2d 538, 545.

In paragraph eight of the second amended complaint, plaintiff alleges "[t]hat as an inducement to the public in general and the [p]laintiff's decedent specifically to swim in the pool the [d]efendant hired or required lifeguards for the swimming pool." We believe that this allegation is sufficient to raise an inference that the presence of the lifeguards may have created a deceptive appearance of safety on which the decedent relied. This inference is decidedly weak, however, and is largely unsupported by specific *factual* allegations. Nevertheless, count I was dismissed on the pleadings, and plaintiff is not required to prove his case at that stage. We believe that in the inter-

est of fairness, plaintiff should be allowed to attempt to support the allegation of decedent's reliance with allegations of fact, if he can.

■ We must now determine whether, despite the potential existence of a duty of care, the Park District is immune from suit by virtue of section 3—108 of the Tort Immunity Act. Section 3—108(a) grants general immunity from liability arising from a failure to supervise. Section 3—108(b), however, creates an exception to that immunity with respect to swimming pools with posted hours of use. In such a case, the public entity "is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." (Ill. Rev. Stat. 1991, ch. 85, par. 3—108(b).) The plaintiff maintains that, because the lifeguards were not in a position to observe the pool, the Park District failed to provide supervision and it is liable under section 3—108(b). The Park District, on the other hand, contends that it provided supervision by having three lifeguards on duty and available during the posted hours. At best, argues the Park District, plaintiff has alleged inadequate or negligent supervision rather than a complete failure to provide supervision.

■ We find that the allegations of plaintiff's complaint constitute a "failure to provide supervision" within the meaning of section 3—108(b) of the Tort Immunity Act. Although three lifeguards were ostensibly on duty and were present in the pool area, according to the complaint they were on a break and were not in a position to observe the pool. This was not mere inattention or a momentary lack of vigilance; it was a complete absence of supervision. Notwithstanding the Park District's argument that supervision means general oversight and availability rather than continuous attention to every person, we need not determine the precise parameters of that term. We simply hold that under the facts alleged here there was no supervision under section 3—108(b). We therefore reverse the trial court's dismissal of count I of plaintiff's complaint. Plaintiff should be given the opportunity to amend his complaint to allege facts supporting liability based on a theory of voluntary undertaking.

■ We now consider whether the trial court erred in granting summary judgment in favor of the School District on count II of plaintiff's second amended complaint. Count II contained the same allegations as count I, except count II alleged that the School District, rather than the Park District, was the "owner or operator and in control" of the swimming pool. The School District's motion for summary judgment was supported by the affidavit of its superintendent, John Strand. Strand averred that while the School District owned the swimming pool facility, the Park District had sole and exclusive control over the summer swimming program and any lifeguards and

supervisory personnel were employees of the Park District. The trial court granted the summary judgment motion, finding that the affidavit was sufficient to establish that the School District had no control or supervision over the pool and was therefore not liable for decedent's death.

We affirm the trial court's decision to grant summary judgment. Strand's uncontradicted affidavit established that the Park District had sole and exclusive control over the swimming activities at the pool. All of the allegations of negligence contained in plaintiff's complaint were based on a failure to properly supervise and control those activities. Since the School District had no control over the operation of the pool, it had no duty to supervise those operations. Any potential duty of care owed to the decedent by the Park District arose from its *operation* of the pool and existed without regard to ownership. While mere ownership of the facility may impose certain duties upon the School District, those duties did not include the duty to supervise an activity over which it had no control. *Cf. Vesey*, 145 Ill. 2d 404, 583 N.E.2d 538 (while common law requires public property to be maintained in reasonably safe condition, where property is leased, the landlord is not liable for injuries caused by condition of premises under tenant's control).

For the reasons stated above, the judgment of the circuit court is affirmed in part and reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

LYTTON, J., concurs.

JUSTICE BRESLIN, dissenting in part:

In my view, the Park District provided supervision within the meaning of section 3—108(b) of the Tort Immunity Act when it employed lifeguards who were on duty during the hours the pool was open. Therefore, I would hold that the Park District is immune to the plaintiff's suit and I would affirm the trial court's dismissal of the plaintiff's claim.