# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Barnett v. Ludwig & Co.*, 2011 IL App (2d) 101053

---

| | |
|---|---|
| Appellate Court Caption | CAROLYN BARNETT, Individually and as Special Administrator of the Estate of Darius Smith, Deceased, Plaintiff-Appellant, v. LUDWIG AND COMPANY and LAKE TOWERS ASSOCIATES, II, LLP, Individually and d/b/a Cinnamon Lake Towers, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1053 |
| Filed | November 4, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for defendants in a negligence action arising from the drowning of plaintiff's 17-year-old decedent in a swimming pool at defendants' apartment complex, notwithstanding plaintiff's allegations that there was no lifeguard, that the pool attendant did not attempt to stop "dangerous activities" or act to assist decedent and that defendants failed to comply with the Swimming Facility Act, since defendants had no duty to decedent to provide a lifeguard, and even if a duty could be derived from the Act, that duty was fulfilled by the posting of the proper notice in lieu of providing a lifeguard. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-L-912; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Scott B. Gibson, of Gibson & Associates, Ltd., of Waukegan, for appellant.

Anthony J. Ritrovato and Mara H. Weinstein, both of Maisel & Associates, of Naperville, for appellees.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Presiding Justice Jorgensen and Justice Hudson concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Carolyn Barnett, individually and as special administrator of the estate of Darius Smith, appeals from the circuit court's summary judgment in favor of defendants, Ludwig and Company and Lake Towers Associates, on plaintiff's claim for negligence for the drowning death of Darius in a swimming pool at an apartment complex owned and managed by defendants. Plaintiff also appeals from the denial of her own motion for summary judgment. We affirm, holding that, as a matter of law, defendants breached no duty of care to Darius.

¶ 2                                          BACKGROUND

¶ 3    On July 30, 2008, Darius drowned in an outdoor swimming pool that Cinnamon Lake Towers apartment complex (CLT) provided for residents and their guests. Darius drowned in the deepest part of the pool, which was nine feet deep. He was 17 years old at the time. Darius did not reside at CLT in July 2008 but was a guest of his sister, Shanta Barnett. Plaintiff brought a negligence suit against defendants. She alleged the following. On the day in question, defendants' employee, the "pool attendant," was on duty at the pool. The pool attendant was not a lifeguard, and defendants did not assign a lifeguard to the pool that day. On "multiple occasions" prior to July 30, 2008, the pool attendant permitted minors under the age of 16 to swim in the pool even though the attendant knew that no lifeguard was present and that no parent or guardian was accompanying the minors. On July 30, 2008, Darius and "other teenagers" were swimming, jumping, and diving into the pool and were playing "tag-like games" in the pool and on the deck. The attendant did not admonish Darius and the others to stop playing in this "dangerous" manner. At one point during this activity, Darius struck his head on the concrete pool deck, became disoriented, and was unable to swim. For several minutes he "call[ed] for help in the deep end of the swimming pool ***, thrashing about, and in distress." The pool attendant was asked to help Darius, but before the attendant took action Darius was brought out of the pool by others. Darius was later pronounced dead from drowning.

¶ 4    The complaint alleged numerous grounds of negligence. First, plaintiff alleged that

defendants were negligent because their employee, the pool attendant, did not attempt to stop the "dangerous activities" in which the swimmers were engaged and did not act to assist Darius when alerted that he was in distress. Second, plaintiff alleged that defendants failed to comply with the Swimming Facility Act (Act) (210 ILCS 125/1 *et seq.* (West 2010)), section 820.300(b) of title 77 of the Illinois Administrative Code (Code) (77 Ill. Adm. Code 820.300(b) (2011)), and defendants' own policies on pool use in force on July 30, 2008. Specifically, plaintiff claimed that defendants violated section 820.300(b) "by not providing a lifeguard" and violated the Act "by not preserving the public health, safety, and general welfare of residents and guests using their swimming pool, including [Darius], [and] by failing to provide and enforce the minimum required standards for safety for its swimming pool as required by the [Code]." Plaintiff did not allege how defendants failed to comply with their own policies, but did quote the following extracts from those policies:

" 'The protection, health, and safety of our residents are our primary concern.' "

" 'An attendant is present in the pool when it is open. No one is permitted in the pool if the attendant is not present without the consent of management. The attendant has all authority to maintain the proper conduct and operation of the pool. It is their discretion to close the pool whenever circumstances warrant it. They also retain the right to order anyone out of the pool and the surrounding area if they deem their conduct to be hazardous to themselves, the property, or other residents/guests. If they find it necessary to summon the police, ambulances etc., they have full authority to do so.' "

Plaintiff also alleged that defendants' policies provided that "residents and guests over the age of sixteen (16) were allowed to use the pool and the pool area without the requirement of a supervising adult."

¶ 5 On March 11, 2010, plaintiff filed a "motion for summary judgment on liability." She attached to the motion the depositions of (1) John Sullivan, who was the pool attendant on duty at CLT from 11 a.m. to 3 p.m. on July 30, 2008; (2) Rachel Elabbar, the pool attendant who went on duty at 3 p.m. on July 30 and was on duty when Darius drowned; (3) Nicole Salter, who was the manager of CLT from 2007 to the present; (4) John Lantz, who was hired by defendants in 1992 and has been their director of pool operations since 1998; (5) Oliver Salmeron, who was 12 years old in July 2008 and was using the pool when Darius died; and (6) Coral Salmeron, Oliver's sister, who was 17 years old[1] in July 2008 and was using the pool when Darius died. Plaintiff also attached a copy of defendants' policies that were in effect on July 30, 2008.

¶ 6 Defendants responded to plaintiff's motion and filed their own motion for summary judgment. They attached the same depositions and many of the same documents that plaintiff attached to her motion.

¶ 7 The following is taken from the attachments to the motions. On July 30, 2008, defendants had in force a document entitled "Cinnamon Lake Towers Pool Regulations" (CLT regulations), which it gave to any resident of the complex who wished to secure a pass for

[1]Though Coral testified that she was born in February 1991, and there is no evidence in the record to the contrary, plaintiff repeatedly states that Coral was 16 years old in July 2008.

admission to the pool area. The CLT regulations state that they were promulgated "[i]n conjunction" with title 77, section 820.360, of the Code (77 Ill. Adm. Code 820.360 (2011)), which requires that pool operators display conspicuously in the pool area, and enforce, certain rules specified by the section. The regulations contain the provisions quoted above dealing with the authority of the pool attendant. The regulations also restrict pool use to residents of the complex and their guests. The regulations contain other restrictions, including the following:

"1. *** Residents who are 16 years of age or older may use the pool during the posted hours of operation. Since there is no proven method for pool attendants to discern a person's age, other than what they state, it may be necessary for pool attendants to refuse admittance to anyone they doubt is of the required age. They may also request that a person swim a lap in the pool to ascertain whether they will need to be supervised by a person of at least 16 years of age. Resident(s) must accompany their guest(s).

2. Anyone 15 years of age[2] and under[ ] must be accompanied by a parent or legal guardian adult (18 years or older) who have [*sic*] a valid pool pass."

At the bottom of the regulations is written, in large print:

"*NO DIVING ALLOWED*

We Do Not Have Lifeguards On Duty–Swim At Your Own Risk"

¶ 8       Lantz testified that part of his responsibility as defendants' director of pool operations is to ensure that the signs required by the Code are displayed in the pool area. Lantz checks the signs twice a summer: first, before the pool opens for the season, and, second, in midsummer. Lantz did not know when exactly he did the midsummer check in 2008 but believed that it would have been before July 30. Lantz also noted that the maintenance supervisor for CLT checks the signs daily. On August 1, 2008, the day after Darius drowned, Lantz took pictures of the signs. Posted in two places on the fence that encircles the pool area is a sign that reads: "WARNING. NO LIFEGUARD ON DUTY. Children under the age of 16 should not use pool without an adult in attendance." Also, two notices are posted to a bulletin board on the pool house located inside the pool area. The first notice reads: "NOTICE. This facility is NOT protected by lifeguards. Persons under the age of 16 must be accompanied by a parent, guardian, or other responsible person at least 16 years of age. Swimming alone is not recommended." The second notice begins, "NOTICE. Patron Regulations for Swimming Pools," and then states verbatim the rules that section 820.360 requires be posted. One of the rules states: "If present, lifeguards are responsible for enforcing safety rules and responding to emergencies. Parents or guardians should supervise their children."

¶ 9       The photographs also show rescue devices hanging on the exterior of the pool house. One is a flotation ring. The other is a shepherd's hook, which, the witnesses agreed, is designed to pull a person out of the water.

¶ 10      Salter testified that CLT has had no lifeguard in the time she has been employed there.

---

[2]Witnesses employed by defendants testified that the minimum age is now 16 years of age.

Rather, CLT uses a pool attendant, who is positioned by the gate to the pool area and restricts access to those authorized by the CLT regulations. The pool attendant requires residents to sign a log sheet when they enter the pool area. The log sheet for July 30, 2008, was used as an exhibit at the depositions and is attached to the summary judgment motions. According to Salter, the pool attendant has no discretion to allow a person under 16 years of age in the pool area without a parent or legal guardian. Accordingly, if at any time the parent or guardian leaves the pool area, the child or ward must leave as well. Salter also stated that, though no one may enter the pool area who is not a resident or a guest of a resident, the pool attendant has the "discretion" to permit a guest to remain in the pool area if the resident leaves temporarily, assuming the guest is at least 16.

¶ 11    Salter acknowledged that Elabbar told police that Darius had been in the pool area for 1½ hours before he drowned at approximately 4:45 p.m. Salter also acknowledged that Elabbar told her that Shanta "had signed in and left." Salter noted that Elabbar would have had the "discretion" to allow Darius to stay if Shanta left.

¶ 12    Salter testified that she hires the pool attendants, who must have CPR training but need not have lifeguard training or certification. As part of the orientation, Salter shows the attendants how to use the shepherd's hook. Salter acknowledged that, when she hired Elabbar, she knew that Elabbar could not swim.

¶ 13    Counsel represented to Salter at her deposition that several residents of CLT had claimed that their children had used the pool without a parent or guardian present. Salter had no personal knowledge of the subject matter of the statements but doubted that the pool attendant would have let the children use the pool area without a parent or guardian.

¶ 14    Sullivan testified that he was a part-time pool attendant at CLT from 2006 through 2008 and that his shift was 11 a.m. to 3 p.m. He did not have a lifeguard license while he was working at CLT. Sullivan testified that the pool attendant's responsibilities were to keep the pool clean and to make sure that only persons authorized by the CLT regulations were allowed into the pool area. Sullivan also testified, however, that he tried to avoid distractions while on duty so that he could "make sure nobody drown[ed]." Sullivan had no memory of Darius swimming in the pool during his shift on July 30, 2008. Sullivan assumed that, if Darius was in the pool during Sullivan's shift, Shanta would have signed in, but the log sheet for that day shows that she signed in only at 4:30 p.m.

¶ 15    Elabbar testified that she was a part-time pool attendant from May 2007 to September 2008. When Salter hired Elabbar, she knew that Elabbar was unable to swim. As Elabbar understood them, the duties of the pool attendant were to enforce the CLT regulations, not to save people from drowning. Elabbar had no lifeguard training. While on duty, the pool attendant wears a shirt that says "POOL ATTENDANT" on the front and "NOT A LIFEGUARD. SWIM AT YOUR OWN RISK" on the back. A photograph of the shirt is attached to each of the motions. Elabbar testified that she was wearing this shirt on July 30, 2008. Asked what "training" she received for the position of pool attendant, Elabbar answered that Salter showed her how to use the shepherd's hook. Salter said, "If a victim is drowning, put it around them and pull it out."

¶ 16    Asked if she was aware of any occasions where a person under 16 years of age was

-5-

permitted in the pool area without a parent or guardian, Elabbar stated that the only instances she could recall were the four occasions on which she agreed to watch Christina Mercado during her shift while Christina's parents were absent.

¶ 17    Elabbar testified that, when she arrived at the pool area at about 2:30 p.m. on July 30, 2008, to begin her shift, Darius was already in the pool swimming. Also present were Coral, Oliver, and their friend Antonio. Elabbar knew that Coral was 17. Elabbar spoke with Sullivan, who told her that everyone in the pool area had signed in. Elabbar did not see Shanta that day until she came to identify Darius's body. Elabbar did not know why Shanta's name was on the log sheet for July 30, 2008. Elabbar would have known if Shanta had been there. Elabbar acknowledged that, although she had seen Darius on about seven prior occasions in July 2008, CLT office records showed that Shanta first obtained her pass for the CLT pool on July 30, 2008. Elabbar understood the CLT regulations to require that, no matter his or her age, the guest of a resident cannot enter or remain in the pool area while the resident is absent.

¶ 18    According to Elabbar, when Darius first visited the pool, she tested his swimming skill by having him swim a lap. Darius had no problem with the test. On none of the occasions when Elabbar observed him did Darius struggle to swim, and she considered him a "strong" swimmer.

¶ 19    Elabbar testified that, during her shift on July 30, 2008, Darius swam with Coral, Oliver, and Antonio. At one point, Elabbar had to admonish Darius because he was doing flips into the pool, which are forbidden by CLT policy. At another point, Darius called out that he was drowning. Elabbar walked over to Darius and saw that he was laughing. Elabbar admonished Darius not to "cry wolf." After that, Elabbar did not hear Darius claim that he was drowning. About 30 minutes after she admonished Darius, she saw Oliver, Coral, and Antonio pulling Darius out of the pool. Coral shouted to Elabbar that Darius was drowning and that they needed help. Elabbar went over, helped lift Darius out of the pool, and performed CPR on him.

¶ 20    Coral testified that she went to the pool on July 30, 2008, with Oliver and Antonio, who was 16 years old. Elabbar was on duty as the pool attendant and was wearing a T-shirt that said she was not a lifeguard. Coral knew that there were signs around the pool area warning that no lifeguard was on duty. Accompanying Coral and the others that day was Katie, a five-year-old girl whom Coral was babysitting. None of the four had a parent present. Though Coral's testimony was somewhat unclear on this point, it appears that she had been to the pool area before but that July 30, 2008, was the first day she actually went into the pool. Coral was shown the log sheet for that date but did not see her name on it. Coral noted that Elabbar would typically sign the sheet for her and would put Coral's father's name down because Elabbar did not remember Coral's name. Coral testified that, prior to July 30, 2008, Oliver went to the pool frequently and would go with either their brother Armando or their father.

¶ 21    Coral testified that she also saw at the pool on July 30, 2008, a girl who was about 15 or 16 and her brother, who was younger than 10. Coral did not know their names but knew they lived at CLT. These children were not with their parents or another adult.

¶ 22    Coral testified that, as she and the others were swimming, they were joined by Darius, whom they had not seen before. Darius swam with them and raced Antonio and Oliver. Darius told Coral that he had not been swimming in a while, but Darius appeared to Coral to be a good swimmer. At one point, while Darius was in the deep end of the pool, he began flailing his arms and saying he was drowning. Because Darius had a smile on his face and appeared to be laughing, the others thought he was joking. Darius then bobbed in and out of the water about three times before he sank again. After some time passed and they saw Darius lying on the bottom of the pool, they all became concerned and dove down to pull him out. As they were pulling him up onto the deck, Coral shouted to Elabbar for help. Elabbar came over and performed CPR on Darius. Coral recalled that, as Darius was struggling in the water, Elabbar was seated with her back to the pool.

¶ 23    Oliver confirmed that he was at CLT's pool on July 30, 2008, with Coral and Antonio. Oliver had come to the pool area twice a day that summer. On some of these occasions, he had been admitted to the pool area while accompanied by his sister or brother while his parents were absent. According to Oliver, sometime before July 30, 2008, CLT changed its rules about pool access. Previously, Oliver had to be accompanied by his father or mother, but after the change he could go with his sister or brother.

¶ 24    Oliver testified that he knew Elabbar was not a lifeguard and that he never saw a lifeguard posted in the pool area. Oliver saw Elabbar enter the pool only once, when a small child had walked from the pool steps into deeper water and Elabbar "grabbed" him. Oliver had never seen Elabbar use the shepherd's hook or flotation ring to assist a swimmer. Oliver recalled that, on July 30, 2008, Elabbar wore a shirt that said that she was not a lifeguard and that pool users swim at their own risk. Also on that date, Oliver saw a similar warning on signs posted around the pool area.

¶ 25    Oliver testified that, while he was swimming with Coral and Antonio, Darius came into the pool area. Oliver had not seen him before. Oliver recalled that Darius came alone and wrote on the log sheet the name of the resident whose guest he was. Darius began swimming with Oliver and the others. Darius appeared to have no problem swimming. Though Darius was doing flips into the pool, Elabbar did not admonish him. At one point, while he was in the deepest part of the pool, Darius said to Oliver, "I can't swim." Darius was moving his legs and arms and was "screaming and yelling," but because he was also "laughing," Oliver thought he was joking. Oliver then grabbed Darius to bring him over to the ladder, but Darius sank and pulled Oliver under water. Darius sank to the bottom and was there about five seconds before Oliver became concerned. He, Coral, and Antonio decided to dive down to see what was wrong. Before they dove, Oliver yelled to Elabbar for help, but she did not come. When Oliver and the others pulled Darius out of the water and onto the deck, Elabbar came over and performed CPR on Darius.

¶ 26    In her summary judgment motion, plaintiff argued that defendants were negligent as a matter of law for failing to provide a lifeguard at the pool. In arguing, first, that defendants had a duty to provide a lifeguard, plaintiff devoted nearly all of her discussion to certain statutory and administrative provisions, which, she claimed, imposed the duty. Plaintiff placed most emphasis on section 820.300(b). In the course of this argument, plaintiff included the following paragraph:

"Owners and operators of public pools which include Cinnamon Lakes Pool are '***
under a legal duty to make reasonable provision and take reasonable precautions to
provide for the safety of patrons ***.' [*Brumm v. Goodall*, 16 Ill. App. 2d 212, 224-25
(1958).] Pool patrons '*** have the right to assume that the [pool] facility was properly
prepared for their use and that the "defendant" had taken appropriate measures to make
it safe.' [*Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 426 (1998)]."

Brumm and *Jackson* discuss the common-law duty that private operators of swimming pools
and swimming beaches owe to their patrons. Plaintiff did not elaborate on how these
decisions bear upon the case at hand.

¶ 27   Next, plaintiff argued that, had a lifeguard been stationed at CLT's pool when Darius was
struggling, the lifeguard would have had "a non-discretionary duty to observe the pool and
rescue Darius before he drowned," because "Illinois case law imposes the duty on a lifeguard
at a swimming pool to rescue persons who are drowning regardless of age, sex, gender, or
any other distinction."

¶ 28   In responding to plaintiff's summary judgment motion, and in moving themselves for
summary judgment, defendants argued four main points: (1) defendants did not fail to
comply with section 820.300(b) and, alternatively, Darius did not belong to the class of
persons that section 820.300(b) was meant to protect; (2) because the potential danger from
CLT's pool was open and obvious, defendants "did not owe a duty to protect or warn
[Darius] about any risks associated with the use of a swimming pool"; (3) defendants'
provision of a pool attendant and rescue equipment did not in itself constitute "a voluntary
undertaking to protect the health, safety, and welfare of anyone swimming in the pool"; and
(4) defendants' own internal policies and procedures did not create a duty of care to Darius.

¶ 29   At the hearing on the motions, the trial court court stated that it was "assum[ing,] *** in
order to analyze [the motions]," that "there were minors [at CLT] who were not supervised
pursuant to [section 820.300(b)]" and that there was a "pattern *** of [CLT] routinely
allowing minors to be present without supervisors." The trial court agreed with plaintiff that
a lifeguard, if present, would have had a duty to maintain vigilance for all swimmers in
jeopardy, regardless of age or other classification. The court disagreed with plaintiff,
however, that section 820.300(b) required a lifeguard to be present for the benefit of patrons,
like Darius, who were at least 16. The court also disagreed with plaintiff that defendants, by
providing a pool attendant and instructing the attendant in the use of rescue equipment such
as a shepherd's hook, voluntarily undertook a duty to protect patrons from drowning. The
court concluded that, as a matter of law, defendants owed "no duty to Darius" to provide him
a lifeguard.

¶ 30   Plaintiff filed a motion to reconsider, which the trial court denied. She timely appeals.

¶ 31                                      ANALYSIS

¶ 32   First, we address defendants' motion to strike plaintiff's "statement of facts, along with
her argument," for failure to cite legal authority or pertinent portions of the record.
Defendants note specifically that plaintiff provides no legal citation for her assertion that "all
[well-]pleaded facts are assumed to be true" for purposes of the summary judgment motions.

-8-

While plaintiff should have included a citation here, the remainder of her brief contains appropriate citations to legal authority. Defendants also complain that plaintiff cites mostly to her amended complaint, apparently on the assumption that this court must accept those allegations as true for purposes of evaluating the motions. Plaintiff may rely on her amended complaint, but not without limitation. "In reviewing the grant of a motion for summary judgment all well-pleaded *uncontroverted* allegations and inferences to be drawn from them are taken as true." (Emphasis added.) *Crane Erectors & Riggers, Inc. v. La Salle National Bank*, 125 Ill. App. 3d 658, 664 (1984). A party "cannot rely simply on his complaint or answer to raise an issue of fact when the movant has supplied facts which, if not contradicted, entitle him to judgment as a matter of law." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 248 (1994). As defendants recognize, plaintiff does not rely exclusively on her complaint but also cites the testimony of the deposition witnesses. Defendants note, however, that instead of citing directly to the deposition testimony, plaintiff cites to pages of her summary judgment motion that cite and summarize that testimony. While this is not the preferred method of citation, it does not incline us to strike plaintiff's statement of facts. We deny defendants' motion to strike, and we proceed to the merits.

¶ 33    Plaintiff argues that the trial court erred by denying her summary judgment and by granting defendants summary judgment. The governing substantive law is that, "[t]o succeed in a claim for negligence, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the breach." *Vancura v. Katris*, 238 Ill. 2d 352, 373 (2010). The governing procedural law is that summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Adams*, 211 Ill. 2d at 42-43.

"In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. [Citations.] In appeals from summary judgment rulings, review is *de novo*. [Citation.]" *Id.* at 43.

The basis on which the trial court granted summary judgment for defendants was that they had no duty to provide Darius a lifeguard. Whether a duty exists is a question of law. *Id.*

¶ 34    Before we reach the question of whether defendants owed a duty to Darius, we must identify precisely how plaintiff claims defendants were negligent. Although plaintiff's complaint recited a host of alleged grounds of negligence, she did not assert them all in addressing the summary judgment motions, nor does she assert them all here. For instance,

-9-

the complaint alleged that defendants were negligent because Elabbar failed to admonish Darius and the others not to engage in "dangerous activities" and because Elabbar later failed to save Darius. On appeal, however, plaintiff does not fault defendants for Elabbar's failure to act, but rather faults them for failing to provide a more capable individual to monitor the pool. After quoting section 820.300(b), plaintiff states:

> "The unambiguous language of [section 820.300(b)] requires [defendants] to have a lifeguard present at any time the pool is open based upon [their] admitted actions and omissions in allowing, on a continuous basis, children under the age of 16 to enter the pool area when not accompanied by a parent or guardian. There can also be no dispute that the only adult present who had a duty to save Darius [was] defendants' employee Rachel Elabbar, who, by her own admission, cannot swim. Elabbar was hired by property manager Salter who also cannot swim and who had actual knowledge that Elabbar cannot swim."

Plaintiff also does not assert on appeal that defendants were negligent because they violated their own written policies.

¶ 35 Thus, of the multiple grounds of negligence that plaintiff alleged in her complaint, the only ground she continues to assert is that defendants were negligent in not having a lifeguard on duty at the pool. Plaintiff claims that defendants' duty to post a lifeguard arose under both common law and statutory and administrative provisions. Plaintiff relies most heavily on section 820.300(b), which was promulgated by the Illinois Department of Public Health pursuant to the Act. See 210 ILCS 125/13 (West 2010) (authorizing the Department to issue "rules [and regulations] as may be necessary *** to protect the health and safety of the public using *** pools and beaches [and] spas" covered by the Act). Section 820.300(b) states:

> "(b) Lifeguards. Lifeguards shall be provided at all wave pools, and water slides. In addition, lifeguards shall be provided at all pools, as defined in Section 820.10 [(Ill. Adm. Code 820.10 (2011))], when persons under the age of 16 are allowed in the pool enclosure specified in Section 820.200(a) [(Ill. Adm. Code 820.200(a) (2011))] without supervision by a parent, guardian or other responsible person at least 16 years of age. At facilities where lifeguards are not provided, a sign shall be posted that states 'This facility is not protected by lifeguards. Persons under the age of 16 must be accompanied by a parent, guardian or other responsible person at least 16 years of age. Swimming alone is not recommended.' " Ill. Adm. Code 820.300(b) (2011).

There is no question that the CLT pool and pool area are within the class of "pools" and "pool enclosures" governed by section 820.300(b). Where plaintiff falters, however, is in contending that the regulation was intended to protect persons of Darius's age. "A violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence. [Citation.] A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered." *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434-35 (1991). Unquestionably, drowning is the principal harm that section 820.300(b) is designed to prevent. On this point, plaintiff

successfully distinguishes the present case from *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 426 (2008), where the plaintiff, an independent landscaper, was injured by what he claimed was a hazard created by the Illinois Power Company (IPC). The plaintiff argued that section 8-101 of the Public Utilities Act (220 ILCS 5/8-101 (West 2008)) imposed on the IPC a duty not to create such dangerous conditions. Section 8-101 of the Act provided:

> "A public utility shall furnish, provide, and maintain such service instrumentalities, equipment, and facilities as shall promote the safety, health, comfort, and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just, and reasonable." 220 ILCS 5/8-101 (West 2008).

The court held that this section was "not designed to protect injured parties," but, rather, it and the remainder of the Act " 'were designed for the protection of the public generally, and to insure the service of a continual supply of electrical energy without due interruption.' " *Buerkett*, 384 Ill. App. 3d at 426 (quoting *Longnecker v. Illinois Power Co.*, 64 Ill. App. 3d 634, 641 (1978)).

¶ 36    It is not enough, however, that the decedent suffered the kind of harm the provision was meant to prevent. The decedent must also fall within the class of persons the provision was meant to protect. See *Petrauskas v. Wexenthaller Realty Management, Inc.*, 186 Ill. App. 3d 820, 830 (1989) ("The plaintiff must be within the class of persons intended to be protected by the [provision] *and* the resulting harm must be of the kind that the ordinance was intended to prevent." (Emphasis added.)). For instance, the plaintiff in *Gallick v. Novotney*, 124 Ill. App. 3d 756 (1984), sued the defendant because she fell and injured herself outside the defendant's store, and she alleged that her fall was the result of an elevation difference between contiguous sidewalk slabs. The plaintiff challenged on appeal the trial court's refusal to provide the jury with an instruction adopting as the standard of care the Facilities for the Handicapped Act (Ill. Rev. Stat. 1981, ch. 111½, ¶ 3701 *et seq.*). The appellate court upheld the refusal, reasoning that the Handicapped Act applied only to physically handicapped persons and that the plaintiff did not demonstrate that she was within that class. *Gallick*, 124 Ill. App. 3d at 759-60.

¶ 37    Section 820.300(b) requires lifeguards "when persons *under the age of 16* are allowed in the pool enclosure *** without supervision by a parent, guardian or other responsible person at least 16 years of age."[3] (Emphasis added.) 77 Ill. Adm. Code 820.300(b) (2011). This is an explicit distinction based on age. We must read an administrative regulation as a whole, giving effect to every word, clause, and sentence and not rendering any part of it superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). We must not, however, embrace a literal interpretation of a regulation if it would produce an absurd or unjust result. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). We find no bar to giving effect to the plain wording of section 820.300(b). Legislatures and administrative bodies have the general power to distinguish and limit, and age-based distinctions are inevitable. Some of the lines might seem fine. For instance, plaintiff notes that, though Darius was 17 when he

---

[3]As we note below, for all but wave pools and water slides, no lifeguard is required if a notice with the language specified in section 820.300(b) is posted.

drowned, he was still a minor under Illinois law. See 755 ILCS 5/11-1 (West 2010) ("A minor is a person who has not attained the age of 18 years."). Of course, anyone, regardless of age, might benefit from the presence of a lifeguard, just as anyone, regardless of a physical handicap, might benefit from the requirement that facilities be handicapped accessible. The question, however, is whether it was reasonable for the Department to identify age 16 as a significant threshold in terms of one's physical maturity and to base its requirements on that threshold. We acknowledge that a lifeguard, if present, would have had a duty to monitor all persons of whatever age and may well have rescued Darius. This does not, however, allow us to alter the express classification made by the Department. We hold that Darius was not within the class of persons that section 820.300(b) was intended to protect.

¶ 38 Even if section 820.300(b) did create a duty to Darius, the undisputed facts show that defendants did not breach that duty. See *Adams*, 211 Ill. 2d at 43-44 ("the issues of breach and proximate cause are factual matters for a jury to decide [citation], provided there is a genuine issue of material fact regarding those issues"). The record shows that, on July 30, 2008, there was prominently posted in the CLT pool area a notice that read: "NOTICE. This facility is NOT protected by lifeguards. Persons under the age of 16 must be accompanied by a parent, guardian, or other responsible person at least 16 years of age. Swimming alone is not recommended." This tracked verbatim the language that section 820.300(b) requires be displayed where lifeguards "are not provided."

¶ 39 Plaintiff, however, asserts: "A sign is sufficient only at facilities that are not required to have lifeguards present. The code does not allow an entity to simply choose between having lifeguards present and posting a sign." Plaintiff does not support this with any textual analysis, and her position is in fact irreconcilable with the text. The second sentence of section 820.300(b) states that lifeguards are required when "persons under the age of 16 are allowed in the pool enclosure *** without supervision by a parent, guardian or other responsible person at least 16 years of age." Ill. Adm. Code 820.300(b) (2011). As we read section 820.300(b), there are two classes of pools: (1) wave pools and water slides, where a lifeguard must, without exception, be provided; and (2) all other pools, as defined in section 820.10, where *either* a lifeguard must be provided *or* a sign must be posted that no lifeguard is on duty and that persons under 16 "must be accompanied by a parent, guardian, or other responsible person at least 16 years of age." We arrive at this conclusion by first noting that the final sentence of section 820.300(b) does not read, "At facilities where lifeguards are not *required*" but, "At facilities where lifeguards are not *provided*." The question becomes, in which facilities is it permitted not to provide lifeguards? The requirement of a lifeguard for wave pools and water slides appears categorical, but for other pools lifeguards are required only when persons under 16 are "allowed in the pool enclosure *** without supervision by a parent, guardian or other responsible person at least 16 years of age." Construing the second and final sentences of section 820.300(b) together, we conclude that, where a pool operator posts a notice that a lifeguard is not on duty and that persons under the age of 16 must be accompanied by a parent, guardian, or other responsible person at least 16 years of age, the pool operator has, under the section, otherwise disallowed such persons under 16 years of age from the pool enclosure. Hence, except for wave pools and water slides, a lifeguard need not be provided as long as the notice specified in the final

sentence of section 820.300(b) is posted. This is the case even if the pool operator has no system for monitoring whether persons under 16 years of age are in the pool area without a responsible person at least 16. Accordingly, we do not find it material that, as plaintiff repeatedly claims, defendants frequently allowed children into the pool area without a responsible person at least 16. As there is no dispute that defendants posted the notice specified in section 820.300(b), there could have been no breach of duty to Darius–assuming, of course, that a duty was owed to him in the first place.

¶ 40    Another source from which plaintiff seeks to derive a duty is section 2 of the Act, which provides:

"Legislative purpose. It is found that there exists, and may in the future exist, within the State of Illinois public swimming pools, spas, water slides, public bathing beaches, and other swimming facilities which are substandard in one or more important features of safety, cleanliness or sanitation. Such conditions adversely affect the public health, safety and general welfare of persons.

Therefore, the purpose of this Act is to protect, promote and preserve the public health, safety and general welfare by providing for the establishment and enforcement of minimum standards for safety, cleanliness and general sanitation for all swimming pools, spas, water slides, public bathing beaches, and other aquatic features now in existence or hereafter constructed, developed, or altered and to provide for inspection and licensing of all such facilities." 210 ILCS 125/2 (West 2010).

This provision is far too broad to be read as imposing a specific duty of the kind plaintiff claims was owed to Darius by defendants.

¶ 41    Plaintiff alternatively argues that the common law imposed on defendants the duty to provide a lifeguard. Plaintiff claims that, after her "exhaustive search of Illinois law," she has found no "cases holding that a pool operator does *not* have a duty of safety to a minor." (Emphasis added.) Plaintiff, however, devotes virtually no effort to describing what Illinois case law *does* hold as to a pool operator's duty to a minor. If, as our own research suggests, there are no recent cases addressing whether and when a lifeguard must be provided for minors, it may well be because the legislature has occupied this area since 1974, when the Act was passed. See Pub. Act 78-1149 (eff. Aug. 28, 1974) (adding Ill. Rev. Stat. 1975, ch. 111½, ¶ 1201 *et seq.*). The legislature's intervention in this area was noted by our supreme court in *Cope v. Doe*, 102 Ill. 2d 278 (1984), where the plaintiff sued the owner of an apartment complex after the decedent, a seven-year-old boy, drowned in a retention pond on the property. The court rejected the plaintiff's suggested analogy between the retention pond and a swimming pool:

"Plaintiff argues that defendants, as commercial landowners, owed a duty to take reasonable precautions for the safety of those patrons who were invited to use water on their land for recreational purposes. Plaintiff urges that this case is analogous to those where liability was imposed on an operator of a public bathing facility for the drowning of a child. ***

*** Our courts and the legislature have traditionally regarded public swimming pools differently than other bodies of water. [Citation.] The law in Illinois does place a duty

-13-

upon private operators of public swimming pools or public bathing resorts to take precautions for the safety of their patrons." *Id.* at 287-88.

¶ 42    In *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416 (1995), the legislature's action in the matter of swimming pools was one of the appellate court's bases for refusing to hold that the defendant, a park district, had a common-law duty to supervise adult swimmers in its pool. The trial court in *Blankenship* had dismissed, for failure to state a cause of action, the plaintiff's complaint alleging that the park district was liable because the decedent drowned in its pool while the lifeguards on duty were on break. The appellate court reversed the dismissal, holding that the plaintiff had adequately alleged that the district had a duty of care to the decedent because it voluntarily undertook to protect swimmers by hiring lifeguards. *Id.* at 423-24. The court also held, however, that the district had no duty to supervise the decedent independent of the voluntarily assumed obligation. The court gave several reasons for this specific holding. First, the court found no "Illinois case imposing liability for injuries suffered by *an adult* due to lack of supervision at a swimming pool." (Emphasis added.) *Id.* at 421-22. The court noted that the cases cited by the plaintiff–*Cope*, *Brumm*, and *Decatur Amusement Park Co. v. Porter*, 137 Ill. App. 448 (1907)–each involved minors. Second, the court observed that "the plaintiff's status as a minor or an adult *should* make a difference" in determining whether a duty to supervise exists, since "the foreseeability and likelihood of injury would be substantially less for a responsible adult swimmer than for a child." (Emphasis in original.) *Blankenship*, 269 Ill. App. 3d at 422. Third, and last, the court found "highly persuasive [the defendant's] argument that the administrative regulations promulgated pursuant to [the Act] define the scope of its duty to supervise." *Id.* The court went on:

> "Those regulations require lifeguards only at swimming pools which allow persons 16 or under to enter 'without a responsible person 17 years of age or older present'[4] (77 Ill. Adm. Code § 820.300 (1985)). Thus the Illinois legislature and the Department of Public Health have expressed their judgment that adult swimmers are not in need of the protection provided by lifeguards. We also note that our supreme court cited to [the Act] in support of its statement in *Cope* that the courts and the legislature 'have traditionally regarded public swimming pools differently from other bodies of water.' (*Cope*, 102 Ill. 2d at 288, 464 N.E.2d at 1028.) It would appear that the difference referred to in *Cope* has traditionally been limited to situations involving minors, not adult swimmers." *Id.*

¶ 43    Plaintiff finds it telling that *Blankenship* expressly noted that the decedent in that case was not a minor. *Blankenship*, however, did not purport to define a pool operator's duty to minors, and so plaintiff must establish through other authorities that defendants had a duty to provide a lifeguard. Plaintiff has failed in this effort, as we explain below. We note that, though the *Blankenship* court found "highly persuasive" the defendant's claim that the Act and its regulations "defined the scope of its duty to supervise" the decedent, the court did not conclude that the Act and its regulations were the exclusive source for that duty. We need not decide that issue, because plaintiff has failed, in any event, to glean from the common

---

[4]The minimum age of the "responsible person" has since been lowered to 16.

law a basis for holding that defendants had a duty to provide a lifeguard.

¶ 44    In the course of her discussion of the common law, plaintiff reproduces verbatim the paragraph in her summary judgment motion where she cited *Brumm* and *Jackson*. Here, again, however, she fails to discuss how these decisions apply to the case at hand, but relies strictly on their broad pronouncements, *e.g.*, "[T]he defendant was under a legal duty to make reasonable provisions and to take reasonable precautions to provide for the safety of his patrons" (*Brumm*, 16 Ill. App. 2d at 224-25), and, "When [the defendant] opened [the beach] to the public and charged admission fees for that purpose, patrons had the right to assume that the facility was properly prepared for their use and that [the defendant] had taken appropriate measures to make it safe" (*Jackson*, 185 Ill. 2d at 426). As we read these cases, plaintiff could not have used them to her advantage anyway.

¶ 45    *Jackson* determined that there was a question of material fact whether the defendants, operators of a lakeside swimming beach, owed a duty to swimmers to keep the water free of underwater obstructions such as the pipe that the decedent allegedly struck when he dove into the water. *Jackson*, 185 Ill. 2d at 426. Here, plaintiff alleges no comparable hazard, but rests her complaint entirely on the inherent danger of the pool. *Jackson*, however, determined that the plaintiff survived summary judgment only because she alleged a hazard that was not "open and obvious." See *Jackson*, 185 Ill. 2d at 426 ("Cases addressing the open and obvious danger of water are premised on the notion that bodies of water pose two particular types of risk: the risk of drowning and the risk of injury from diving into water that is too shallow. Neither of those risks is at issue here.").

¶ 46    In *Brumm*, the decedent, a 14-year-old boy, drowned at a public pool operated by the defendant. The decedent's estate brought a negligence action. The evidence at trial showed that the pool was 105 feet long, 45 feet wide, and up to 9 feet deep. There were three lifeguards on duty when the decedent drowned. The jury returned a verdict for the plaintiff, which the trial court upheld. The court cited evidence that the lifeguards did not keep an adequate lookout. The court also relied on the opinion testimony of a pool operator that the pool had too few guards in the deep end, where the decedent drowned. *Brumm*, 16 Ill. App. 2d at 224.

¶ 47    *Brumm* concerned a death at a pool where the operator chose to post lifeguards. *Brumm* provides no guidance on when the lifeguards should be posted in the first instance. Notably, *Brumm* was decided two decades before the Act went into effect.

¶ 48    Another case plaintiff cites is *Decatur*, which *Brumm* cited in passing. Plaintiff fails to mention the fact that *Decatur* was decided before 1935, which would ordinarily mean that the case is not binding but only persuasive authority. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996). Since, however, *Decatur* was cited approvingly by our supreme court in *Cope* (see *Cope*, 102 Ill. 2d at 288), we consider it lifted out of limbo. In *Decatur*, the plaintiff's decedent, a 14-year-old boy, drowned in a pond operated by the defendant as part of an amusement park. The plaintiff brought a negligence action, and the jury returned a verdict in his favor. On appeal, the defendant argued that none of the four counts submitted to the jury stated a cause of action. The appellate court disagreed, holding that counts two and three did not state a cause of action while counts one and four did. The

court explained:

> "[I]t was the duty of [the defendant] to make reasonable provision to guard against those accidents which common knowledge and experience teach are liable to befall those engaging in the sport which [the defendant] had invited the public to participate in.
>
> *** Each of [counts II and III] is based solely upon the assumption that it is actionable negligence not to have an experienced or competent swimmer or diver at hand to render aid to those liable to become strangled, etc.
>
> *** [W]hile it may be and is right to require one occupying the place of [the defendant] to have attendants or guards to render assistance in time of need, we do not see how it can follow that such reasonable provision would require the furnishing of a competent or experienced swimmer and diver, and that a failure to so furnish such experienced swimmer and diver would of itself and alone constitute negligence. There may be and quite likely are other means which can be employed in such a case which are as effectual as those made use of by an expert swimmer or diver. The counts which aver only the absence of such a swimmer or diver do not state a good cause of action." *Decatur*, 137 Ill. App. at 452-53.

*Decatur* appears to hold that it is insufficient as a matter of law to claim that a private operator of a public swimming pool, beach, or other body of water was negligent simply because it did not provide an experienced swimmer or diver to supervise users. Since, as we have noted, the only basis for liability that plaintiff continues to assert on appeal is that defendants failed to post a lifeguard, *Decatur* appears to undercut rather than support plaintiff's position. Plaintiff, we note, does not even discuss the facts of *Decatur*.

¶ 49    The final case plaintiff cites is this district's decision in *Lawson v. Schmitt Boulder Hill, Inc.*, 398 Ill. App. 3d 127 (2010). The plaintiff, an employee of a McDonald's franchise owned by Schmitt Boulder Hill, Inc. (Schmitt), was assaulted in the parking lot of Schmitt's restaurant in the early morning hours. The complaint, which was brought against both Schmitt and McDonald's, alleged that McDonald's had a duty of care to the plaintiff because it had issued to its franchisees security standards addressing such issues as the lighting of their parking lots and had dispatched McDonald's security personnel to franchisees to determine compliance with the standards. McDonald's moved to dismiss the claim under section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2008)). McDonald's claimed as an affirmative defense that it owed no duty of care to the plaintiff. McDonald's attached to its motion an affidavit from an employee averring that McDonald's did not own the Schmitt franchise and had no right to direct its day-to-day operations. The trial court granted the motion to dismiss, but we reversed:

> "[The plaintiff's] allegations, which must be taken as true for purposes of the motion to dismiss, establish that *** McDonald's mandated compliance with security procedures. *** [W]hether a franchisor maintains mandatory security procedures is a crucial factor in determining whether the franchisor has voluntarily undertaken a duty of care toward a franchisee's employees. Given the procedural posture of the case, it is unnecessary to decide whether these allegations are sufficient in themselves to establish a duty. McDonald's had the initial burden to affirmatively show that, notwithstanding the well-

pleaded allegations of plaintiff's complaint, it did not undertake a duty of care. McDonald's failed to meet that burden. Its affidavit indicates that it lacks authority to control the day-to-day operations of Schmitt's restaurant or to hire, discharge, or discipline Schmitt's employees, but none of the pertinent cases suggest that such authority is a prerequisite to the recognition of a duty." *Lawson*, 398 Ill. App. 3d at 133.

¶ 50    Plaintiff claims that *Lawson*'s holding can be analogized to the present case. She maintains that, just as McDonald's could owe a duty of care to one who was not its employee, so could defendants owe a duty to one who was not within the class of persons specified in section 820.300(b). *Lawson*, however, did not purport to expand the law determining when a statute or regulation may be held to establish a standard of care. The plaintiff in *Lawson* did not attempt to derive a standard of care from a statute or regulation, but alleged rather that McDonald's voluntarily undertook a duty by generating its own standards. Plaintiff does not invoke the doctrine of voluntary undertaking here; she does not identify any steps that she claims defendants took toward ensuring safety in the pool. See *Wakulich v. Mraz*, 203 Ill. 2d 223, 241 (2003) (voluntary-undertaking doctrine holds that one who voluntarily undertakes to render services to another is subject to liability for bodily injury or physical damage caused by the failure to exercise reasonable care in performing the undertaking). Rather, plaintiff concentrates entirely on defendants' *omissions*.

¶ 51                                    CONCLUSION

¶ 52    We hold that, as a matter of law, defendants owed no duty to Darius to provide a lifeguard at the CLT pool. Alternatively, we hold that, even if a duty to Darius could be derived from section 820.300(b), defendants fulfilled that duty by posting the proper notice in lieu of providing a lifeguard. The trial court did not err in granting summary judgment for defendants and in denying summary judgment for plaintiff.

¶ 53    Affirmed.